GAMING SYSTEMS CORPORATION *v.* BOARD OF TAX REVIEW OF THE CITY OF NEW HAVEN (2112)

DUPONT, C.P.J., BORDEN and STOUGHTON, Js.

Argued March 8—decision released May 21, 1985

*Mary E. Holzworth,* with whom, on the brief, was *John R. Fitzgerald,* for the appellant (plaintiff).

*Charles Albom,* corporation counsel, with whom, on the brief, was *Edward F. Piazza,* deputy corporation counsel, for the appellee (defendant).

STOUGHTON, J. The plaintiff owned a number of lottery terminals or machines in the city of New Haven. The machines were assessed at 70 percent of true and actual value by the defendant for the tax years 1981 and 1982. The plaintiff appealed the 1981 assessment to the board of tax review, which upheld that assessment. The plaintiff appealed from the decision, and the tax year 1982 was added to the appeal by amendment. The trial referee upheld the assessment for 1981 but reduced the assessment for 1982. The plaintiff has appealed.[1] We find no error.

General Statutes § 12-62a (b) requires that each municipality assess all property for purposes of the local property tax at a uniform rate of 70 percent of present true and actual value, as determined under General Statutes § 12-63. Under General Statutes § 12-63, the present true and actual value of all property other than certain kinds of land shall be deemed by all assessors and boards of tax review to be the fair market value thereof. In an appeal from a tax valuation, the burden is on the plaintiff to prove that it was exces-

---

[1] This appeal was originally filed in the Appellate Session of the Superior Court. General Statutes § 51-197a (c).

sive or unjust. *Rustici* v. *Stonington,* 174 Conn. 10, 15, 381 A.2d 532 (1977).

The memorandum of decision, supplemented by the undisputed exhibits, discloses the following facts: On March 1, 1981, the plaintiff purchased lottery machines and other assets from Datatrol, Incorporated. With the purchase, the plaintiff acquired from Datatrol the contract to run the lottery in Connecticut and certain other states. The price for the assets purchased by the plaintiff from Datatrol was about $4,400,000. The plaintiff allocated about $1,900,000 of the total purchase price to the fixed assets situated in Connecticut. It allocated about $950,000 of this sum to 825 new and used lottery machines, or $1152 per machine. The contract with the state of Connecticut provided an option for the state to purchase the operation at the end of the renewal terms. The option price for lottery machines installed after March 31, 1980, was $4500 for each machine, less $62.50 for each month of use per machine. The contract between Datatrol and the state ran for three years, and, therefore, the plaintiff depreciated the machines over the life of the contract. At the end of three years, the plaintiff showed no value for these machines on its books.

The plaintiff filed with the New Haven assessor a list of taxable personal property dated October 26, 1981. The plaintiff reported property for which it gave a list price, new, of $65,664, and a net value of $47,253. It reported by way of explanation that fifty-seven gaming terminals were purchased on March 1, 1981, for $1152 each; that they had a useful life from March 1, 1981, of twenty-five months; they had a useful life from October 1, 1981, of eighteen months; and the depreciated value of each machine was $829. This means that the plaintiff had claimed depreciation for the machines at 4 percent per month, and that for a seven month period the plaintiff had claimed depreci-

ation for each machine at 28 percent. The plaintiff also furnished the assessor with a list of the fifty-seven locations where the terminals were to be found in New Haven in 1981.

The plaintiff also filed with the assessor a list of taxable personal property dated October 14, 1982. It reported property for which it gave a net value of $16,560. It attached an unsigned note by way of explanation. The note explains that terminals were purchased on March 1, 1981, for $1152 each; the Connecticut lottery contract expires on March 12, 1983, at which time all terminals will be scrapped; that straight line depreciation from March 1, 1981, to zero as of March 30, 1983, is claimed; and that the depreciated value per terminal as of October 1, 1982, is $1152 x 6/25, or $276. That is, the plaintiff claimed depreciation to zero value over twenty-five months, and that the value for the remaining six months after October 1, 1982, was $276 per terminal. The plaintiff therefore claimed depreciation for each terminal at 76 percent. In order to have a total net value of $16,560 in 1982, the plaintiff must have had sixty terminals, although that information does not appear on the form.

The assessor placed a true and actual value of $3325 on each machine for the tax year of October 1, 1981. For the tax year of October 1, 1982, the assessor added 5 percent to the value of each machine, which added value was subsequently disallowed by the referee.

The referee found that the assessor based his opinion as to the value of the machines on his past experience as an assessor in appraising personal property. He had been the personal property assessor for the city for eight years, and during the course of that period he had had to determine the value of machines of many types, some of which were comparable, in some degree, to the plaintiff's machines. He examined the plaintiff's machines at their installation sites. He had the oppor-

tunity to examine the contract between Datatrol and the state, and knew of the option given the state to purchase machines at a price of $4500 each, less depreciation. There was no established market for the machines, so that the assessor was obliged to resort to some method of ascertaining value other than by market price. *New Haven Water Co.* v. *Board of Tax Review,* 166 Conn. 232, 236, 348 A.2d 641 (1974).

The plaintiff presented the assessor with almost no information to assist him in his task. The machines were depreciated by 5 percent by the assessor, but he was given no information to support the claims for depreciation made by the plaintiff, except the claim that the machines would be scrapped at the termination of the contract. The plaintiff did not produce any substantial information as to the age of the machines, except a portion of the contract between the plaintiff and Datatrol, showing 584 used machines and 241 new machines purchased at a discount from Datatrol's book value on March 1, 1981.

The taxpayer is under a duty to file with the assessor a list of his taxable property and furnish the facts upon which valuations may be based. If he fails to do so, the assessor is only required to act upon the best information he can obtain. *Cooley Chevrolet Co.* v. *West Haven,* 146 Conn. 165, 169, 148 A.2d 327 (1959). It is for the trier to determine the credibility of witnesses and the weight to be accorded their testimony. Having heard the testimony and seen the exhibits, the referee concluded that the plaintiff had failed to sustain its burden of proving that the assessments were excessive or unjust except as to the 5 percent penalty added by the assessor for 1982. That conclusion is not clearly erroneous.

There is no error.

In this opinion the other judges concurred.