[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
These are consolidated appeals by the taxpayer, Lombardi Enterprises, Inc. ("Lombardi"), from actions of the Board of Tax Review of the City of Waterbury ("Waterbury"), dismissing its appeals from the tax assessor's imposition of personal property taxes and penalties and interest for 63 motor vehicles registered in the states of Wisconsin, Oregon and West Virginia. The assessments were for October 1 in the years 1992 through 1996. Pursuant to Section 12-117a, C.G.S., this court "shall have power to grant such relief as to justice and equity appertains, upon such terms and in such manner and form as appear equitable", and the court hears such appeals de novo. Hutensky v. Avon,163 Conn. 433, 436 (1972).[1]
Connecticut's personal property tax law requires that "all goods, chattels and effects . . . belonging to any person who is a resident in this state" be listed for purposes of property tax in the town where such person resides. Section 12-71 (a), C.G.S. In the case of a Connecticut corporation, such as Lombardi, its property "shall be set in its list and liable to taxation in the same manner as the property of individuals", Section 12-59, C.G.S., and all of the personal property of the corporation which is not permanently located on the assessment day in any town "shall be set in the list of the town in which such corporation has its principal place of business. . . .". Moreover, unregistered motor vehicles are presumed to be taxable in the town where their owner resides, "unless evidence, satisfactory to the assessor in such town, is submitted to the contrary". § 12-71b(g), C.G.S.
On December 29, 1993 a representative of the Connecticut attorney general's office wrote to the Waterbury assessor's office, enclosing a list of 63 motor vehicles and a copy of a complaint filed by the Commissioner of Consumer Protection against Lombardi and its owner, William M. Lombardi, Jr. Based on the information in those enclosures, the Waterbury assessor, acting pursuant to Section 12-53 (a), C.G.S., added those 63 vehicles to Lombardi's list of taxable property and assessed taxes on those vehicles for October 1, 1992 and October 1, 1993, CT Page 9111 as well as a 25% penalty for Lombardi's failure to file a list of taxable property including those vehicles. Section 12-42, C.G.S. Lombardi, through an employee, made inquiry as to the basis of taxation and filed appeals to the Board of Tax Review, covering both assessments. It offered no information to the assessor or to the Board concerning the actual ownership of those vehicles. Having been unsuccessful before the Board, it appealed from the Board's action and filed similar appeals for the assessment dates of October 1, 1994 and 1995. By stipulation of the parties the issues raised by those appeals control the disposition of the taxes imposed for October 1, 1996 as well.
Three questions are presented by these appeals:
1. On the assessment dates in question did Lombardi have an ownership interest in these 63 vehicles, or any of them, so as to permit Waterbury to levy personal property tax thereon?
2. If so, were the vehicles properly assessed for each of those years?
3. Was Lombardi properly assessed a penalty for each of those years, pursuant to § 12-42, C.G.S.?
On this appeal Lombardi has taken the same approach as before the Board, that is to say, rather than offering any evidence as to the ownership of the vehicles in question, it has relied solely on a denial by Mr. Lombardi of any knowledge about or ownership interest in those vehicles. That testimony was supported by the testimony of two witnesses who have been employed by Lombardi in the past.
The court did not find the testimony of these witnesses credible. Mr. Lombardi is a convicted felon on "some larceny count", as he put it. The other witnesses, Barbara Estevens and Diane Laskowski, have been closely associated with Mr. Lombardi for many years, Ms. Laskowski having been his girlfriend for the past seven years. For several years and at the time of trial they resided together. Both women were parties with Mr. Lombardi to a consent agreement and an order of February 24, 1994 with the Department of Motor Vehicles, in which they agreed not to be associated in any manner related to the leasing or renting of motor vehicles in the state of Connecticut with Mr. Lombardi. This consent agreement and order was the culmination of the investigation about which the attorney general's office had CT Page 9112 communicated with the city assessor on December 29, 1993. Although Ms. Estevens' relationship with Mr. Lombardi was probably strained by her admitted embezzlement of funds from Lombardi, Mr. Lombardi has a lien on her home as a result of that embezzlement. Both women are still employed by or associated with Mr. Lombardi's brother in business activities. Finally, the testimony of these witnesses was so at variance with established facts that the court could not take it seriously in many respects.
As Lombardi points out, however, merely because the court disbelieves Mr. Lombardi's denial of ownership of the vehicles in question, it cannot infer that Lombardi did, in fact, own the vehicles, the central issue in this case. Howat v. Passaretti,11 Conn. App. 518, 529 (1987). The question then becomes: What did Waterbury prove about the ownership of these vehicles and the propriety of their taxation to Lombardi?
Lombardi was incorporated by Mr. Lombardi in 1977, and he is its sole owner and has been its president since its inception. The sole purpose of establishing Lombardi was to operate a business known as American Rental Centers out of the premises at 2100 South Main Street in Waterbury, a premises owned by Mr. Lombardi and identified by him as Lombardi's principal place of business. Among other things that business rented cars and trucks to the general public. On December 10, 1991 Mr. Lombardi incorporated Fox Rental Systems, Inc. ("Fox") in the state of Wisconsin, naming Diane Laskowski as its "initial registered agent". Thereafter, on June 9, 1995 Ms. Laskowski, identifying herself as president and Mr. Lombardi as vice president of Fox, filed a "delinquent annual report" with the Wisconsin Secretary of State's Office for that corporation. Although Mr. Lombardi was its incorporator and Ms. Laskowski its president, neither testified as to any purpose for the incorporation of Fox in 1991. In fact, they unconvincingly denied any knowledge of that transaction. Ms. Estevens testified that she was familiar with Fox when she was an employee of Lombardi and knew it only as a mailing address in Wisconsin. Her signature appears on documents in evidence, registering two vehicles in Wisconsin on behalf of their "owner," Fox Rental Systems. Ms. Laskowski testified that she coincidentally visited the address of Fox in Madison, Wisconsin while on a trip to Chicago and did not testify as to any business activities she saw underway there.
What is clear is that Fox was the company to which 60 of the CT Page 9113 63 motor vehicles contained on the list supplied by the attorney general's office to the assessor's office were registered. Fox was the last registered owner of these vehicles prior to October 1, 1992, the first assessment date at issue here. What is also clear to the court is that Ms. Estevens and Ms. Laskowski took orders from Mr. Lombardi during their employment by Lombardi.[2]
Thus, Mr. Lombardi was incorporator, owner and president of Lombardi from 1977 forward. He was the incorporator and vice president of Fox from 1991 forward, and his live-in girlfriend, Ms. Laskowski, was the president. Fox was the registered owner of 60 of the 63 vehicles at issue here at least through December of 1993 and carried on no business operations. Finally, unlike Connecticut, two of the three states in which these vehicles were registered, Wisconsin and Oregon, levy no personal property tax on motor vehicles.[3] Of the 60 vehicles registered to Fox, 52 were registered in Wisconsin or Oregon.
Given these facts, can tax liability for these 60 vehicles[4]
be fastened on Lombardi? The "instrumentality" and "identity" conceptions, first expounded by the Connecticut Supreme Court inZaist v. Olson, 154 Conn. 563 (1967), provide the answer to that question.
 Courts will disregard the fiction of separate legal entity when a corporation "is a mere instrumentality or agent of another corporation or individual owning all or most of its stock. . . . "Under such circumstances the general rule, which recognizes the individuality of corporate entities and the independent character of each in respect to their corporate transactions, and the obligations incurred by each in the course of such transactions, will be disregarded, where . . . the interests of justice and righteous dealing so demand." Id, 573-74. (Citations omitted.)
To prove that a corporation is a mere instrumentality of the individual behind the corporation, the evidence must show "complete domination [by that individual], not only of finances but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own. . . ." Id, 575. In this case the evidence shows clear control by Mr. Lombardi of all of the activities of Lombardi and of the only apparent activity of Fox; viz., the registration of vehicles in Wisconsin and Oregon, which would not tax them. In addition, the CT Page 9114 instrumentality rule requires proof that his control was used by him "to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest or unjust act. . . ." Ibid. There can be no other conclusion from the evidence here than that Mr. Lombardi created Fox for the sole purpose of avoiding Lombardi's statutory duty to pay taxes to Waterbury. Therefore, the third element of the instrumentality rule is also proven; viz., "that the aforesaid control and breach of duty . . . proximately cause[d] the injury or unjust loss complained of". Ibid.
For all practical purposes Lombardi and Fox were one and the same and were controlled by the same individual, William Lombardi, Jr. The evidence, therefore, satisfies the "identity" rule complementary to the "instrumentality" rule. "If plaintiff can show that there was such a unity of interest and ownership that the independence of the corporations had in effect ceased or had never begun, an adherence to the fiction of separate identity would serve only to defeat justice and equity by permitting the economic entity to escape liability arising out of an operation conducted by one corporation for the benefit of the whole enterprise". Mull v. Colt Company, 31 F.R.D. 154, 163
(S.D.N.Y.), quoted in Zaist v. Olson, Id., 576.
The facts in this case are, beyond question, that Mr. Lombardi caused the creation of both Lombardi and Fox and thereafter completely dominated and controlled them for the purpose of avoiding tax liability to Waterbury. This is the situation contemplated by the Zaist case. "When . . . the corporation is so manipulated by an individual or another corporate entity as to become a mere puppet or tool for the manipulator, justice may require the courts to disregard the corporate fiction and impose liability on the real actor". Id., the Board for a review of the assessment for 1994, Exhibit E, it did not deny ever owning the vehicles in question; in fact, it claimed that those vehicles had been sold since the earlier assessment. These shifting positions of Lombardi further buttress the court's conclusion that the registration of the 60 vehicles to Fox as of October 1, 1992 and October 1, 1993 were part of Mr. Lombardi's scheme to evade the taxes properly due and payable to Waterbury.
Lombardi's stance on these appeals is the same as it was before the Board of Tax Review. It offered no evidence as to the actual ownership of the vehicles in question even though it has CT Page 9115 been in a position since 1994 to investigate that question. In several contexts courts have recognized a duty on the part of a taxpayer to submit information to the taxing authority relevant to the proper taxation of property. See, e.g., NortheastDatacom, Inc. v. Wallingford, 212 Conn. 639, 649 (1989); GamingSystems Corp. v. Board of Tax Review, 4 Conn. App. 106, 110
(1985); IBM Credit Corp. v. Board of Tax Review, 227 Conn. 826,829 (1993). Given this duty on the part of the taxpayer and Lombardi's ability to provide such information, the court cannot but conclude that it has failed to provide any counterweight to the evidence offered by Waterbury.
Indeed, Waterbury argues that Lombardi should be estopped from denying ownership of the vehicles after December 1993 because of its failure to provide such countervailing proof. Since the evidence of ownership offered by Waterbury did not, itself, establish ownership of the vehicles in Fox or Lombardi after December 1993, this claim is central to Waterbury's case for the assessments in 1994, 1995 and 1996.
The court has found several cases, one recent and two not so recent, in which such an estoppel claim was recognized in tax matters. See IBM Credit Corporation v. Board of Tax Review, op. cit. supra; Union School District v. Bishop, 76 Conn. 695, 698
(1904); Windsor v. Bedortha, 128 Conn. 551, 555 (1942). Given the clear duty of taxpayers to provide information to the taxing authority, as established by the cases cited earlier, it is not at all certain that all of the elements of a classic equitable estoppel claim need be proven by Waterbury. It may simply be that the "taxpayer cannot justly complain" about the taxing authority's action when it has failed to meet its statutory duty.Northeast Datacom, Inc. v. Wallingford, op. cit. supra 649. But, even measured by the equitable estoppel standard, the court believes Waterbury has met its burden.
There are two elements to such an estoppel claim. One "party must do or say something that is intended or calculated to induce another to believe in the existence of certain facts and to act upon that belief, and the other party, influenced thereby, must actually change his position or do some act to his injury which he otherwise would not have done. . . . In the absence of prejudice, estoppel does not exist." Papcun v. Papcun,181 Conn. 618, 621 (1980). In this case, Lombardi's false denial of its effective ownership through its sibling corporation, Fox, of the vehicles in question, was made to mislead Waterbury into CT Page 9116 believing that the vehicles were not taxable to Lombardi, and, although Waterbury has pursued their taxation diligently, it has been prejudiced by Lombardi's denial in that it has lost the use of the substantial tax revenues due it from 1992 to the present, to say nothing of the legal expenses and other costs of litigation it has incurred. Accordingly, the elements of an equitable estoppel claim have been established to this court's satisfaction. In the absence of any attempt by Lombardi to prove its non-ownership of the 60 vehicles in question for the time period 1994 through the present, the court will presume its ownership and uphold Waterbury's efforts to collect taxes on those vehicles for that period of time as well as for 1992 and 1993.
Based on these findings of facts, the court finds that the assessments for October 1, 1992 and October 1, 1993 are valid and properly imposed upon Lombardi by Waterbury[5]. Since the court has concluded that Lombardi was the actual owner, through its connection with Fox, of the vehicles on October 1, 1992 and all assessment dates thereafter to October 1, 1996, it was obligated to include those vehicles on a tax list to be provided to Waterbury and, given its failure to do so, the assessment of a 25% penalty, pursuant to Section 12-42, C.G.S., was also valid.
The assessments for October 1, 1994, 1995 and 1996, however, were clearly improper since they were arrived at by simply rolling over to those years the assessment from 1993 and adding penalties and interest to it. No independent assessment of the vehicles in question for those years was done.
Based on these findings of fact and conclusions of law, the court enters the following orders:
1. The plaintiff's applications are dismissed in all files as to the 60 vehicles shown in Exhibit 3 as having been registered to Fox Rental Systems, Inc.
2. As to the remaining vehicles in Exhibit 3, the appeals are sustained in the absence of sufficient evidence linking those vehicles to either Fox or Lombardi.
3. Within 30 days of this date the defendant shall complete an assessment of the vehicles in question as of October 1, 1994, October 1, 1995 and October 1, 1996, using the NADA "Blue Book", and prepare an amended assessment, reflecting those values, along CT Page 9117 with the calculation of penalty and interest thereon. The defendant shall also compute the taxes it claims to be due from the plaintiff, taking into consideration the collections already made.
4. The defendant shall provide to the court and the plaintiff the amended assessment and claimed balance due, and the plaintiff shall have 30 days from the date of receipt of the amended assessment to file with the court any exceptions to it and request a hearing thereon.
5. If the court does not receive from the plaintiff any exceptions to the amended assessment within the period allowed, it will proceed to enter final judgment and an order of payment.
BY THE COURT
Joseph M. Shortall