ANDREW HOWAT, ADMINISTRATOR (ESTATE OF ROBERT SCOTT KELLEY) *v.* MICHAEL PASSARETTI ET AL.
(4180)

HULL, BORDEN and DALY, Js.

Argued May 6—decision released July 14, 1987

*Christopher F. Droney,* with whom was *Maurice T. FitzMaurice,* for the appellant (plaintiff).

*Joseph Adinolfi, Jr.,* with whom, on the brief, were *Joseph C. Morelli* and *John D. Miletti,* for the appellee (defendant Orthopedic Service of Manchester, P.C.).

BORDEN, J. In this medical malpractice case, the plaintiff, the administrator of the estate of Robert Scott Kelley, appeals from the judgment rendered for the defendant, Orthopedic Service of Manchester, P.C., after a jury trial.[1] The plaintiff claims that the court

---

[1] At the conclusion of the plaintiff's case, the court, without opposition by the plaintiff, directed a verdict for the named defendant, Michael Passaretti. The judgment rendered upon that directed verdict is not before us on this appeal. We refer herein to Orthopedic Service of Manchester, P.C., as the defendant.

erred (1) in its charge to the jury limiting the jury's consideration of the plaintiff's claim of negligence to certain employees of the defendant, and (2) in excluding evidence of the refusal of the named defendant, Michael Passaretti, to answer certain questions at his deposition. We find no error.

Certain facts were undisputed. On May 7, 1978, the decedent fractured his left ankle in a softball game, and was treated at the hospital by Passaretti, an orthopedic surgeon employed by the defendant. Passaretti applied a short cast to the decedent's leg. On May 19, 1978, Passaretti examined the decedent at the office of the defendant, and told him to return in four weeks for removal of the cast. On May 23, 1978, the decedent's father called Passaretti, and reported that the decedent was having pain in his leg. Passaretti advised that the decedent keep his leg elevated and call back if the pain persisted. On June 1, 1978, the decedent died as a result of massive pulmonary emboli.

The critical disputed facts concerned whether the decedent made two additional telephone calls to the defendant's office between May 19, 1978, and June 1, 1978. The plaintiff introduced evidence that the decedent made those calls and was told by the defendant's receptionists to keep his leg elevated, take aspirin and keep his next appointment. The defendant denied receiving any such calls, and denied that any of its employees gave such advice. The plaintiff's claim of liability against the defendant was that the failure of the defendant properly to respond to those telephone calls was a breach of the applicable standard of care and resulted in the death of the decedent. Specifically, the plaintiff's expert testified that, if the calls were made the defendant should have told the decedent to come in for an examination, and that such an examination would have timely revealed the presence of thrombophlebitis. Thus, the plaintiff's case depended on

establishing that between May 19, 1978, and June 1, 1978, those two additional telephone calls were made to the defendant's office and were responded to by receptionists of the office as indicated.

The jury returned a verdict for the defendant. The court denied the plaintiff's motion to set aside the verdict. This appeal followed.

I

The plaintiff first claims that the trial court erred by charging the jury that its consideration of the plaintiff's claim of negligence was limited to certain employees of the defendant. We disagree.

This claim arises out of the following procedural context. The plaintiff's original complaint, filed in 1979, was against both Passaretti and his employer, the defendant. The plaintiff's allegation of negligence relevant here was that Passaretti failed to respond properly to the decedent's complaints. In depositions, Passaretti and Lilia Barbero, the defendant's office manager, named only two receptionists who were working at the office during the period in question, namely, Doris Stoltenberg and Marilyn Stavnitsky.

On the day of trial, January 16, 1985, the plaintiff sought to amend his complaint to allege that the death of the decedent was caused by the negligence of Passaretti "or persons under his direct supervision and control," and by the negligence of the defendant "and its agents, servants and employees," in failing, inter alia, to respond properly to the decedent's complaints. The court permitted the amendment over the defendants' objection. In response to the defendants' request for specification by the plaintiff of the names of the employees of the defendant whom the plaintiff claimed were negligent, however, the court permitted the defendants to pose oral interrogatories in court to the

plaintiff. The defendants thereupon orally asked the plaintiff to name the employees under Passaretti's control who allegedly failed to respond properly to the decedent's complaints. The plaintiff thereupon orally responded in court to the defendants' interrogatories by naming four physicians, namely, Peter Gram, Paul Henrys, Dudley Ferrari and Andrew Thomas, and three office employees, namely, Stavnitsky, Stoltenberg and Barbero. On the next day the parties reduced the defendants' interrogatories and the plaintiff's responses thereto to writing and filed them with the court.

At the conclusion of the plaintiff's case, the court granted Passaretti's motion for a directed verdict in his favor, without opposition by the plaintiff, leaving Orthopedic Service of Manchester, P.C., as the sole remaining defendant. The defendant began its case by stipulating with the plaintiff in the presence of the jury "that interrogatories were filed to the substituted complaint in which the defendant asked who does the plaintiff claim are the person or persons who acted or failed to act in the manner claimed in . . . the plaintiff's substituted complaint . . . . And, in answer to that interrogatory, an answer to that interrogatory was filed . . . by the plaintiff" naming Gram, Henrys, Ferrari, Thomas, Stavnitsky, Stoltenberg and Barbero. After the plaintiff indicated his agreement to the stipulation, the court stated: "All right. In other words, the jury will consider that as evidence proven in this proceeding. In other words, the stipulation is an agreement of what it purports to say."

During the course of the defendant's case, Barbero, Stavnitsky and Stoltenberg testified. Barbero testified that the two receptionists in the office who took telephone calls were Stavnitsky and Stoltenberg, and that if a patient called in, the receptionist would record the call and the patient's complaint on a message slip which

would go into the plaintiff's chart. She denied receiving any calls from the decedent, and she testified further that a search of the office did not yield any telephone message slips indicating any such calls.

Stavnitsky testified on the next trial day. She denied ever telling a patient to take aspirin and elevate his leg, she had no recollection of having contact with the decedent in May, 1978, and she testified that a search for telephone message slips regarding the decedent did not yield any such slips. She also testified, however, that an additional receptionist, Rosalie Coffin, was working in May, 1978. The defendant's counsel stated that Coffin would testify the next day.

The next day, Coffin testified that she worked part-time as a receptionist in May, 1978. She denied ever telling a patient to elevate his leg and take aspirin, or telling a patient who complained of pain to wait until his next appointment. She did not recall any conversation with the decedent in May, 1978.

Stoltenberg testified that she did not recall receiving any calls from the decedent. She denied ever telling a patient to take aspirin and elevate his leg, and she denied ever telling any patient, who called to complain of pain in a casted leg, to keep his next appointment. Stoltenberg also testified, however, that another substitute receptionist in May, 1978, was Lettie Glenn.

Lettie Glenn testified that in May, 1978, she was a substitute receptionist who filled in for Stavnitsky, Stoltenberg and Coffin. She denied ever telling a patient to take aspirin and elevate his leg, or telling a patient who called in with a complaint of pain in a casted leg to keep his next appointment. She had no recollection of the decedent or of having spoken with him.

With respect to the testimony that the decedent made one or two telephone calls to the defendant's office in the period between May 22, 1978 and May 26, 1978, complaining of pain and requesting an appointment, the plaintiff filed the following request to charge: "the plaintiff has not attempted to prove which particular employee of [the defendant] received this additional call or calls. However, the law imposes a liability upon [the defendant] for any negligent acts *of any of its employees.* Thus, *if any employee* of [the defendant] failed to properly handle [the decedent's] telephone call or calls, [the defendant] is liable for that employee's negligence . . . . " (Emphasis added.) The plaintiff filed a second request to charge as follows: "if you find that the *employees* of [the defendant] performed negligently in responding to the claimed telephone calls by [the decedent], and that such negligence was the proximate cause of [the decedent's] death, then [the defendant] is liable for this negligence . . . . " (Emphasis added.)

The court did not charge as requested by the plaintiff. It charged instead that the "plaintiff also has the burden of proving that [the defendant] through its agents, *Lilia Barbero, Lynne Stavnitsky* and *Doris Stoltenberg* failed to exercise reasonable care in the discharge of their duties as office manager and receptionists, respectively." (Emphasis added.) It also specifically called the attention of the jury to the plaintiff's stipulation "that in answer to an interrogatory . . . which requested . . . 'Who does the plaintiff claim are the person or persons who acted or failed to act' " improperly in responding to the decedent's telephone calls, the plaintiff named "Dr. Peter Gram, Dr. Paul Henrys . . . Dr. Dudley Ferrari, Dr. Andrew Thomas, Miss Lynne Stavnitsky, Miss Doris Stoltenberg and Miss Lilia Barbero. *They are the agents, servants and employees of [the defendant] whose conduct you will consider in reviewing [the plaintiff's] allegations of negligence.*" (Emphasis added.)

The plaintiff excepted to the court's limitation in the charge to the seven persons named in the stipulation, and correspondingly excepted to the court's exclusion of Coffin and Glenn from the jury's consideration. The plaintiff also moved to correct the stipulation by adding the names of Coffin and Glenn. The court denied the motion.

The plaintiff argues that the court erred in excluding Coffin and Glenn from consideration by the jury because it treated the stipulation of the parties as a judicial admission, and thus conclusive on the plaintiff, rather than as an evidentiary admission which could be contradicted by other evidence. See General Statutes § 52-200 (responses to discovery requests are not conclusive, but may be contradicted by other testimony); *Piantedosi* v. *Floridia,* 186 Conn. 275, 278, 440 A.2d 977 (1982); C. Tait & J. LaPlante, Connecticut Evidence §§ 6.5 through 6.8.

It is true that ordinarily a response to a discovery interrogatory is not a judicial admission, and is not, therefore, conclusive on the party making it. *Piantedosi* v. *Floridia,* supra. A judicial admission, however, has a different status. "A party is bound by a judicial admission unless the court, in the exercise of a reasonable discretion, allows the admission to be withdrawn, explained or modified." *Hirsch* v. *Thrall,* 148 Conn. 202, 206–207, 169 A.2d 271 (1961).

Judicial admissions may be expressed in different forms, such as a formal pleading; *Piantedosi* v. *Floridia,* supra; C. Tait & J. LaPlante, supra, § 6.7a; or a written stipulation. C. Tait & J. LaPlante, supra, § 6.7c. They may also be expressed informally and may take the form of an admission " 'in open court' "; *Piantedosi* v. *Floridia,* supra; by counsel as to " 'the issues in dispute, and the like . . . . ' " *Pyne* v. *New Haven,* 177 Conn. 456, 464, 418 A.2d 899 (1979). In such

a case, the court is " 'justified in proceeding with the case upon the basis afforded by them, although it may in a proper case disregard them.' " Id. Thus, a stipulation entered into by an attorney during the trial may constitute a judicial admission, as long as it is clear that this was its intended purpose. C. Tait & J. LaPlante, supra, § 6.7 (d).

We recognize that the question of whether the action of the plaintiff's counsel in this case constituted a judicial admission is close. This is because the stipulation entered into by the plaintiff's counsel in open court, read narrowly and literally, is, on the one hand, subject to an interpretation that it was no more than an in-court repetition of the plaintiff's response to the defendant's interrogatory. On the other hand, the circumstances preceding and surrounding the stipulation lead us to conclude that the court did not err in considering it, instead, as a judicial admission and therefore conclusive on the plaintiff.

First, the stipulation followed and was clearly linked to the plaintiff's successful but belated amendment of his complaint expanding the individual targets of his claim of negligence. That expansion led directly to the court's establishment of the unusual oral, in-court discovery process on the first day of trial. The court permitted the plaintiff at the last moment to expand his complaint, required the defendant to defend against the expanded complaint aided by that discovery process, and heard the plaintiff respond that his claims of negligence were aimed at the seven named persons. The court was justified, therefore, in understanding the plaintiff's in-court stipulation to have the intended purpose of constituting an informal judicial admission which limited the scope of the plaintiff's claim, much as if he had filed a formal pleading to the same effect. See *Pyne* v. *New Haven,* supra; C. Tait & J. LaPlante, supra.

Second, the fact that the parties actually stipulated in open court is highly significant. The defendant could have simply introduced as evidence its written interrogatory and the plaintiff's written response, but it did not. Instead, the parties took the pains to stipulate in the jury's presence that the plaintiff answered the defendant's interrogatory regarding the persons claimed by the plaintiff to have been negligent, by naming the seven individuals involved, and the court told the jury to consider this stipulation "as *evidence proven* in these proceedings. In other words, the stipulation is *an agreement* of what it purports to say." (Emphasis added.) This record is sufficiently clear that the court and the parties understood the stipulation to be more than an evidentiary repetition of the discovery process. They understood it to constitute an in-court, informal judicial admission setting a definite boundary on " 'the issues in dispute.' " *Pyne* v. *New Haven,* supra.

The plaintiff argues that even if the stipulation is considered as a judicial admission, it should not have been conclusive as to him because it concerned matters not within his personal knowledge and was the product of mistaken information. See, e.g., *King* v. *Spencer,* 115 Conn. 201, 205, 161 A.2d 103 (1932). He claims that his response to the defendant's interrogatory upon which the stipulation was based, was dependent on the names of the receptionists supplied to him through the depositions of Passaretti and Barbero.[2]

---

[2] In this connection, we note that the plaintiff did not in the trial court and does not in this court make any claim of bad faith regarding the belated discovery that Coffin and Glenn were also receptionists, that the names should have been disclosed to him earlier, or that he was prejudiced by the timing or process of that discovery and disclosure. The record does not indicate, nor does the plaintiff claim, that the defendants' counsel knew about Coffin and Glenn when the stipulation was made. We note also that the plaintiff had not deposed either Stavnitsky or Stoltenberg prior to trial. He does not complain about the fact that he did not learn about Coffin and Glenn until the trial testimony of Stavnitsky and Stoltenberg.

It is true that, had the plaintiff made a timely request to the court to modify the stipulation based on the evidence that Coffin and Glenn were also employees, the court could well have exercised its "reasonable discretion"; *Hirsch* v. *Thrall,* supra, 207; and permitted him to modify it. We cannot, however, find that the court abused its discretion in declining to do so. The plaintiff did not, prior to the closing arguments and the court's charge to the jury, sufficiently alert the court that he wished to go beyond the stipulation and include Coffin and Glenn as targets of his claim of negligence. His request to charge did not name Coffin and Glenn, and it was so broadly worded that it would have included, not only Coffin and Glenn, but any other employee of the defendant. In addition to the testimony of Coffin and Glenn, and in addition to the seven employees named in the stipulation, the defendant had produced testimony from seven other employees, all of whom denied ever taking telephone messages or recalling any calls from the decedent. The plaintiff's request to charge, therefore, would have expanded the plaintiff's targets to sixteen, from the seven named in the stipulation. We cannot say that the court, faced with the overbroad and unspecific request to charge, erred by submitting the case to the jury on the basis of the in-court stipulation and by declining to charge the jury in accordance with the plaintiff's request.

Nor did the court err in declining to recharge the jury in accordance with the plaintiff's exception, which did, for the first time, focus on Coffin and Glenn. At that point, not only had all the evidence been produced, but the closing arguments of counsel had been presented, and the jury had been charged in accordance with the judicial admission of the plaintiff. We cannot say that the court abused its discretion in concluding, as it may well have, that the plaintiff's request to modify the judicial admission came too late.

Moreover, even if we were to determine that the court erred in considering the stipulation as a judicial, rather than an evidentiary admission, the plaintiff has not persuaded us that the error was harmful. Under the plaintiff's theory of liability, the critical issue was whether the decedent had made the telephone calls in question and received the improper advice from the telephone personnel to elevate his leg, take aspirin and wait until his next appointment. The jury had before it, in opposition to the plaintiff's evidence, the testimony of Barbero, Stavnitsky and Stoltenberg. Their testimony was consistent in either denying, or denying recollection of, any such telephone calls, was consistent with respect to the absence of any telephone message slips reflecting such calls, and was consistent in denying that they ever gave any such advice to anyone, including the decedent. In addition, there was testimony of the seven other clerical personnel of the defendant which essentially corroborated the testimony of Barbero, Stavnitsky and Stoltenberg.

Both Coffin and Glenn denied ever having given any such advice to anyone. The jury could not, even if it disbelieved that denial, infer its opposite. *Novak* v. *Anderson,* 178 Conn. 506, 508, 423 A.2d 147 (1979); *Milano* v. *Sayers,* 6 Conn. App. 491, 492–95, 506 A.2d 162, cert. denied, 199 Conn. 810, 508 A.2d 771 (1986). Both Coffin and Glenn denied having any recollection of talking with the decedent. Under these circumstances, we cannot conclude that, even if the jury had been permitted to consider Coffin's and Glenn's testimony, it is likely that the result would have been different.

## II

The plaintiff's second claim of error requires little discussion. It involves his unsuccessful attempt to introduce into evidence Passaretti's failure to answer a num-

ber of medical questions asked of him by the plaintiff at his deposition before trial. The plaintiff sought to use Passaretti's failure to answer as a basis for an adverse inference. Passaretti's failure to answer was based on his counsel's objection to the questions and direction to Passaretti not to answer them.

It is not necessary to detail the procedures which followed the deposition, either pretrial or surrounding the plaintiff's offer at trial. Suffice it to say that we have fully examined the deposition questions. None of them had any bearing on the plaintiff's theory of liability against the sole defendant on this appeal, namely, that the decedent made two telephone calls and received improper advice from someone in the employ of the defendant. A directed verdict was entered in favor of Passaretti, without opposition by the plaintiff. Under these circumstances, we agree with the defendant that this claim of the plaintiff is not properly before us on this appeal, and we decline to review it.

There is no error.

In this opinion the other judges concurred.