JENNIFER T. BENEDETTO *v.* WILLIAM WANAT
(AC 23349)

Lavery, C. J., and Flynn and Peters, Js.

140

Argued May 8—officially released September 2, 2003

*Joseph M. Brophy*, for the appellant (defendant).

*Alan Rosner*, for the appellees (plaintiff and third party defendants).

*Opinion*

LAVERY, C. J. The defendant, William Wanat, appeals from the judgment of the trial court, rendered after a trial to the court, in favor of the plaintiff, Jennifer T. Benedetto, and the third party defendants, Stanley Benedetto and Norine Benedetto.[1] On appeal, the defendant claims that the court improperly found (1) that a loan agreement between the parties was unrelated to the lease agreement at issue, (2) that the parties entered into a valid oral agreement to repay the loan, (3) that the defendant breached the terms of the lease and (4) awarded damages to the plaintiff. We affirm the judgment of the trial court.

The court, in a thoughtful and well reasoned memorandum of decision, set forth the relevant findings of fact and legal conclusions. Stanley Benedetto, who had previous experience owning and operating various restaurants, discussed his concept for a restaurant called "The Legends" with two restaurant brokers, Victor Klein and Richard Girouard. Stanley Benedetto visited various properties in Fairfield and approached the defendant about a certain parcel. The plaintiff, acting on behalf of Stanley Benedetto, entered into an "indenture" agreement on December 6, 1997, for the lease of the

---

[1] The plaintiff is the daughter of the third party defendants. All the parties agreed that the plaintiff was not the real party in interest, but was acting on behalf of her father, the third party defendant Stanley Benedetto.

property owned by the defendant.[2] The plaintiff, Stanley Benedetto's daughter, signed the lease on behalf of her father because she was the titleholder of the family residence. All the parties knew that she would have no role in the management of the restaurant. Although Girouard initially worked for Stanley Benedetto, he became the project coordinator for the defendant after the lease was signed.

Prior to the signing of the lease, the defendant informed Stanley Benedetto that the building would be ready for occupancy by April 1, 1998. As a result of that representation, Stanley Benedetto sold his former business to devote his attention to the new restaurant. Various problems delayed the project and construction had not even commenced as of April 1, 1998.[3]

Stanley Benedetto was not receiving sufficient income due to the fact that the opening of The Legends had been delayed. Girouard showed him another restaurant for sale, the "Arizona Flats." Stanley Benedetto lacked the necessary funds for the required cash down payment. At Girouard's suggestion, Stanley Benedetto approached the defendant about a loan. The defendant, in March, 1998, agreed to lend Stanley Benedetto $70,000. That loan was never reduced to a writing, no interest rate was discussed and no time frame for repayment was established. Thereafter, Stanley Benedetto completed his purchase of the Arizona Flats and began to operate it.

[2] The terms of the lease provided, inter alia, that the plaintiff would pay rent once the town issued a certificate of occupancy, as well as provide the defendant with a nonrefundable deposit in the amount of $100,000. The defendant was to construct a building for use as a restaurant.

[3] The problems included two appeals to the local zoning board, a water table problem that required changing the location and a new design. The problems associated with the water table and subsequent change in location increased the construction costs; consequently, the parties executed an amendment to the lease. Relevant to this appeal, the amendment contained an increase in the monthly rent, and Stanley Benedetto and Norine Benedetto signed as guarantors.

Delays continued to plague The Legends project. Stanley Benedetto, on several occasions, complained about the lack of progress. As of October 29, 1998, construction of the walls had been completed, but work on the interior could not be started. Stanley Benedetto, concerned over the delays, began to seek an alternate location. He also unsuccessfully attempted to find a replacement tenant. Although he asked both the defendant and Girouard for help in finding a replacement, he never stated that he would not proceed with the project. Furthermore, at all times, Stanley Benedetto had sufficient financial resources to complete the project. The defendant offered $15,000 to terminate the involvement of the plaintiff and the third party defendants in the project, but that offer was refused.

The defendant then informed Stanley Benedetto that if a replacement tenant was found who would accept the same terms as the plaintiff had, he would refund the $100,000 deposit to the plaintiff. The defendant also requested that Stanley Benedetto repay the outstanding loan amount of $25,000.[4]

On December 11, 1998, Girouard called Stanley Benedetto and informed him that he had "great news" and an "early Christmas present." Girouard had found a replacement tenant[5] who agreed to the same terms as the plaintiff had and, therefore, the $100,000 deposit would be refunded. On the basis of that representation, Stanley Benedetto did not prevent the defendant from signing a new lease on February 10, 1999, with the replacement tenant. Without Stanley Benedetto's knowledge, two of the lease terms were changed: The amount of monthly rent was decreased by $100 per month, and the amount of the deposit was decreased to $75,000.

---

[4] Stanley Benedetto previously had repaid $45,000 of the $70,000 loan.

[5] The new tenant was a group consisting of Jocko Saltus, Rebecca Greenberg and Craig Watson.

In March, 1999, Stanley Benedetto asked the defendant for the return of the $100,000 deposit. The defendant claimed that due to the additional costs and the different terms of the lease, he would not refund any of the deposit. The plaintiff responded by initiating the present action by way of a five count complaint.[6] The defendant filed an answer, special defenses and a three count counterclaim. The defendant subsequently initiated a three count cross complaint against the third party defendants that essentially mirrored the claims set forth in his counterclaim.

The first counts of the counterclaim and cross complaint both alleged that the defendant had completed his contractual duties, and that the plaintiff and the third party defendants lacked the necessary financial resources to complete the project, thereby breaching the lease. The second counts claimed that the plaintiff and the third party defendants fraudulently misrepresented their prior restaurant experience and financial resources. The third counts set forth allegations that the plaintiff and the third party defendants had converted $25,000.

The court first addressed the defendant's counterclaim and cross complaint and rendered judgment in favor of the plaintiff and the third party defendants on all counts. With respect to the first counts, the court found that the defendant failed to prove that he had completed all of his contractual obligations. Furthermore, the court found that the plaintiff and the third party defendants proved that they had the financial

[6] Count one of the complaint alleged a breach of the lease. Count two claimed a violation of the covenant of good faith and fair dealing. Count three set forth a violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq. Count four alleged unjust enrichment in the amount of $75,000 (the $100,000 deposit less the $25,000 unpaid balance of the oral lease). Count five claimed that the nonrefundable aspect of the $100,000 deposit was unconscionable and void.

resources to complete the project if they had been given the opportunity. The court determined, with respect to the second counts, that there was no evidence to support the defendant's allegation of fraudulent misrepresentation with respect to the prior restaurant experience and financial resources of the plaintiff and the third party defendants. Finally, as to the third counts, the court found that the $70,000 loan to Stanley Benedetto, which had an outstanding balance of $25,000, was a separate and distinct transaction from the $100,000 deposit. The defendant's pleadings alleged that the plaintiff and the third party defendants had converted the outstanding $25,000 from the $100,000 deposit. The court concluded that because the transactions were separate, the defendant had failed to make a valid claim for the outstanding $25,000.

The court then addressed the claims raised in the plaintiff's complaint. It found that the plaintiff proved that the defendant had breached the terms of the lease by re-leasing the property to the replacement tenant. The plaintiff, the defendant and the third party defendants all understood that the $100,000 deposit would be returned to the plaintiff if a new tenant was found who accepted the same terms as the plaintiff had. If a new tenant was not found, the plaintiff was prepared to fulfill her obligations, for which she had the financial resources.

The court found that Girouard had informed the plaintiff, as well as the third party defendants, that a new tenant had been found who had accepted the same terms and that the $100,000 would be returned. Furthermore, it was not until after the new lease had been signed that the plaintiff was informed that the terms, in fact, had been changed and, therefore, that her deposit would not be returned. Accordingly, the court found that the defendant had breached the terms of the lease

and rendered judgment in favor the plaintiff.[7] Because the plaintiff had assumed that the $25,000 loan balance had reduced the $100,000 deposit to $75,000, she claimed damages in that amount. The trial court awarded the plaintiff damages in the amount of $75,000.[8] This appeal followed. Additional facts will be set forth as necessary.

## I

The defendant first claims that the court improperly found that the loan agreement between the parties was unrelated to the lease, specifically the $100,000 deposit. The defendant sets forth two arguments in support of his claim: (1) the evidence did not support the court's factual finding and (2) the judicial admissions, contained in the plaintiff's pleadings, indicated that the transactions were interrelated. We discuss each argument in turn.

## A

The defendant first argues that the evidence did not support the court's factual finding that the loan agreement was unrelated to the deposit. We disagree.

As a preliminary matter, we set forth the applicable standard of review. "The court's findings of fact are binding on this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole." (Internal quotation marks omitted.) *Berty*

---

[7] The court rendered judgment in favor of the defendant with respect to counts two through five, inclusive.

[8] The court stated that it was bound by the terms of the plaintiff's complaint, which requested a refund of only $75,000: "The court would have found that the loan was a totally separate transaction and had no effect on reducing the original deposit, and, therefore, if it concludes that the plaintiff has proven any of her claims, she would be entitled to the return of $100,000. Because it has not been pleaded that way, and the consistent claim has only been for the return of the $75,000 deposit, the court is bound by that and can award no more."

v. *Gorelick*, 59 Conn. App. 62, 67–68, 756 A.2d 856, cert. denied, 254 Conn. 933, 761 A.2d 751 (2000). "A factual finding is clearly erroneous when it is not supported by any evidence in the record or when there is evidence to support it, but the reviewing court is left with the definite and firm conviction that a mistake has been made. . . . Simply put, we give great deference to the findings of the trial court because of its function to weigh and interpret the evidence before it and to pass upon the credibility of witnesses." (Internal quotation marks omitted.) *Tuxis-Ohr's, Inc.* v. *Gherlone*, 76 Conn. App. 34, 38–39, 818 A.2d 799, cert. denied, 264 Conn. 907, 826 A.2d 179 (2003). As our Supreme Court has stated: "[Appellate courts], of course, may not retry a case. . . . The factfinding function is vested in the trial court with its unique opportunity to view the evidence presented in a totality of circumstances, i.e., including its observations of the demeanor and conduct of the witnesses and parties, which is not fully reflected in the cold, printed record which is available to us. Appellate review of a factual finding, therefore, is limited both as a practical matter and as a matter of the fundamental difference between the role of the trial court and an appellate court." (Internal quotation marks omitted.) *D'Ascanio* v. *D'Ascanio*, 237 Conn. 481, 487, 678 A.2d 469 (1996); see also Practice Book § 60-5.

The defendant argues that Stanley Benedetto needed the loan to purchase the second restaurant, the Arizona Flats, to secure income that was necessary to complete the terms of the original lease. The court, however, heard testimony that Stanley Benedetto had the financial resources to complete his obligations under the lease.[9] A number of his relatives had pledged their financial support to the project. Furthermore, we note that Stanley Benedetto testified that the funds for the origi-

[9] See part III for additional details regarding the financial resources available to the plaintiff and the third party defendants.

nal restaurant were kept separate from the loan funds, which were earmarked for use on the Arizona Flats project. On the basis of that evidence, we cannot say that the court's finding that the loan was a separate and distinct transaction from the deposit was clearly erroneous.

### B

The defendant next argues that the plaintiff had stipulated that the loan was part of the lease and not separate and distinct. Specifically, he claims that the allegation contained in the plaintiff's complaint, a judicial admission, indicated a single transaction and that it was, therefore, improper for the court to find otherwise. We do not agree.

At the outset, we set forth the applicable standard of review and legal principles relevant to that argument. "[T]he interpretation of pleadings is always a question of law for the court . . . . The modern trend, which is followed in Connecticut, is to construe pleadings broadly and realistically, rather than narrowly and technically. . . . Although essential allegations may not be supplied by conjecture or remote implication . . . the complaint must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory upon which it proceeded, and do substantial justice between the parties." (Citations omitted; internal quotation marks omitted.) *Travelers Ins. Co.* v. *Namerow*, 261 Conn. 784, 795, 807 A.2d 467 (2002).

"Factual allegations contained in pleadings upon which the case is tried are considered judicial admissions and hence irrefutable as long as they remain in the case. . . . *Admissions of a conclusory nature are not necessarily determinative, however, as a court may be justified in deviating from any such admission if unsupported by the underlying facts in evidence.*" (Citation omitted; emphasis added.) *Dreier* v.

*Upjohn Co.*, 196 Conn. 242, 248–49, 492 A.2d 164 (1985); see also *Howat* v. *Passaretti*, 11 Conn. App. 518, 525–26, 528 A.2d 834 (1987); C. Tait, Connecticut Evidence (3d Ed. 2001) § 8.16.3, pp. 586–87. With the foregoing in mind, we address the defendant's argument.

Our reading of the allegations set forth in the plaintiff's complaint does not lead us to the conclusion offered by the defendant. It is not clear that the plaintiff's allegations indicated that the deposit was intertwined with the loan. The plaintiff alleged that she provided the defendant with the $100,000 deposit as required by the terms of the lease. The complaint then alleges that the "[d]efendant subsequently agreed to reduce the deposit to $75,000.00 and returned a net total of $25,000.00 of the deposit to [the] plaintiff for her use." Even a broad reading of the plaintiff's complaint does not support the defendant's claim that the complaint alleged that the loan was part of the lease and not a separate transaction from the deposit.

Even if we were to assume arguendo that the complaint alleged that the loan was interrelated with the deposit, we would conclude that the court was justified in deviating from that admission. Such an admission, conclusory in nature, was not supported by the evidence. That admission, therefore, cannot be said to be determinative. Accordingly, the court properly determined that the deposit and loan were separate and distinct transactions.

## II

The defendant next claims that the court improperly found that the parties had entered into a valid oral agreement to repay the deposit to the plaintiff. Specifically, he argues that the oral agreement was invalid due to (1) a lack of consideration and (2) noncompliance with the statute of frauds, General Statutes § 52-550. We discuss each argument in turn.

## A

The defendant first argues that the oral agreement was invalid due to a lack of consideration. We do not agree.

We start by setting forth the applicable legal principles and standard of review. "It almost goes without saying that consideration is [t]hat which is bargained-for by the promisor and given in exchange for the promise by the promisee . . . . We also note that [t]he doctrine of consideration does not require or imply an equal exchange between the contracting parties." (Citation omitted; internal quotation marks omitted.) *Parker* v. *Slosberg*, 73 Conn. App. 254, 263 n.12, 808 A.2d 351 (2002).

"Consideration consists of a benefit to the party promising, or a loss or detriment to the party to whom the promise is made. . . . Although an exchange of promises usually will satisfy the consideration requirement . . . a promise to do that which one is already bound by his contract to do is not sufficient consideration to support an additional promise by the other party to the contract. . . . A modification of an agreement must be supported by valid consideration and requires a party to do, or promise to do, something further than, or different from, that which he is already bound to do." (Citations omitted; internal quotation marks omitted.) *Christian* v. *Gouldin*, 72 Conn. App. 14, 23, 804 A.2d 865 (2002); see also 1 Restatement (Second), Contracts § 71, p. 172 (1981). Whether an agreement is supported by consideration is a factual inquiry reserved for the trier of fact and subject to review under the clearly erroneous standard. See *Tuxis-Ohr's, Inc.* v. *Gherlone*, supra, 76 Conn. App. 45.

In the present case, the plaintiff and the defendant sought a replacement tenant. When a replacement was found, the defendant agreed to return the plaintiff's

deposit in exchange for the opportunity to re-lease the property. Furthermore, the plaintiff agreed to relinquish her rights to the property in exchange for the return of the deposit. It is clear, therefore, that evidence of consideration was before the court. Accordingly, we conclude that the court properly found that the oral agreement to repay the deposit was valid and supported by consideration.

The plaintiff also claims that even if the oral agreement was not supported by consideration, the agreement was nonetheless enforceable under the application of the doctrine of promissory estoppel. We agree with the plaintiff.

Our Supreme Court "has recognized . . . the development of liability in contract for action induced by reliance upon a promise, despite the absence of common-law consideration normally required to bind a promisor; see Restatement (Second), Contracts § 90 (1973). . . . Section 90 of the Restatement Second states that under the doctrine of promissory estoppel [a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." (Citations omitted; internal quotation marks omitted.) *D'Ulisse-Cupo* v. *Board of Directors of Notre Dame High School,* 202 Conn. 206, 213, 520 A.2d 217 (1987).

The trial court stated that the "plaintiff and third party defendants *obviously relied*"; (emphasis added); on the statements of the defendant that a replacement tenant had been found and that the $100,000 deposit would be returned. Furthermore, the plaintiff and the third party defendants changed their position by allowing the re-leasing of the property to proceed. Thus, it is clear that the oral agreement was enforceable under

either the doctrine of promissory estoppel or as supported by consideration.

## B

The defendant next argues that the oral agreement to repay the deposit was invalid due to noncompliance with the statute of frauds, § 52-550.[10] The court did not address that issue, nor was it raised by the defendant in his pleadings. "This court does not ordinarily consider issues not presented to or addressed by the trial court." *Connecticut Ins. Guaranty Assn.* v. *Union Carbide Corp.*, 217 Conn. 371, 385, 585 A.2d 1216 (1991); see also Practice Book § 60-5. The facts and circumstances of this case do not warrant a deviation from that general rule and we will not review that claim.

## III

The defendant next claims that the court improperly found that he breached the terms of the lease. Specifically, the defendant argues that the plaintiff and the third party defendant were unwilling and unable to complete the project. We are not persuaded.

At the outset, we note that "[w]hether there was a breach of contract is ordinarily a question of fact." *Paulus* v. *LaSala*, 56 Conn. App. 139, 153, 742 A.2d 379 (1999), cert. denied, 252 Conn. 928, 746 A.2d 789 (2000). Our review, therefore, is under the clearly erroneous

---

[10] General Statutes § 52-550 (a) provides: "No civil action may be maintained in the following cases unless the agreement, or a memorandum of the agreement, is made in writing and signed by the party, or the agent of the party, to be charged: (1) Upon any agreement to charge any executor or administrator, upon a special promise to answer damages out of his own property; (2) against any person upon any special promise to answer for the debt, default or miscarriage of another; (3) upon any agreement made upon consideration of marriage; (4) upon any agreement for the sale of real property or any interest in or concerning real property; (5) upon any agreement that is not to be performed within one year from the making thereof; or (6) upon any agreement for a loan in an amount which exceeds fifty thousand dollars."

standard. The court found that the defendant had breached the terms of the lease by re-leasing the property to the replacement tenant. There was ample evidence to support that finding. The defendant, nevertheless, contends that the plaintiff did not want to proceed and lacked the financial resources to do so.

Stanley Benedetto had informed the defendant and Girouard that he was interested in finding a replacement tenant. He testified, however, that he never had wanted to quit or to terminate the project. Stanley Benedetto further stated that he never informed the defendant and Girouard that he lacked the financial resources to proceed. He testified that he had access to various sources of funds to complete the project, including (1) approximately $25,000 in the bank account of his other daughter, Laura Benedetto, (2) three potential loans from various family members totaling approximately $60,000,[11] (3) approximately $10,000 in the plaintiff's bank account, (4) $10,000 in bonds held by his wife and (5) equity in the family home. On the basis of the evidence, the court's findings that the plaintiff and the third party defendants were willing to proceed with the terms of the lease and had the financial resources to complete the project was not clearly erroneous.

## IV

The defendant's final claim is that the court improperly awarded damages to the plaintiff. The defendant argues that the court awarded damages under an interference with a contract theory, which was never pleaded, rather than a breach of lease. We disagree.

"The general rule in breach of contract cases is that the award of damages is designed to place the injured party, so far as can be done by money, in the same

---

[11] George Benedetto, the brother of Stanley Benedetto, testified that he would have been willing to loan him between $20,000 and $30,000 for the project.

position as that which he would have been in had the contract been performed. . . . In making its assessment of damages for breach of [any] contract the trier must determine the existence and extent of any deficiency and then calculate its loss to the injured party. The determination of both of these issues involves a question of fact which will not be overturned unless the determination is clearly erroneous." (Internal quotation marks omitted.) *Briggs* v. *Briggs*, 75 Conn. App. 386, 399, 817 A.2d 112, cert. denied, 263 Conn. 912, 821 A.2d 767 (2003).

In the present case, we have determined that the court properly found that the defendant breached the lease. The plaintiff, therefore, "was entitled to recover those damages which would naturally flow from a total breach of the lease." *Danpar Associates* v. *Somersville Mills Sales Room, Inc.*, 182 Conn. 444, 446, 438 A.2d 708 (1980). Moreover, the complaint specifically requested damages in the amount of $75,000 for the deposit.[12] In the absence of a motion to articulate,[13] we will not speculate as to the reasons why the court found a damages award of $75,000 to be appropriate. We simply conclude that the damages award as found by the court was not clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[12] As we have stated, the plaintiff assumed that the $100,000 deposit was reduced by the outstanding $25,000 balance of the loan.

[13] "It is well settled that [a]n articulation is appropriate where the trial court's decision contains some ambiguity or deficiency reasonably susceptible of clarification. . . . [P]roper utilization of the motion for articulation serves to dispel any . . . ambiguity by clarifying the factual and legal basis upon which the trial court rendered its decision, thereby sharpening the issues on appeal. . . . The . . . failure to seek an articulation of the trial court's decision to clarify the aforementioned issues and to preserve them properly for appeal leaves this court without the ability to engage in a meaningful review." (Citation omitted; internal quotation marks omitted.) *Alliance Partners, Inc.* v. *Oxford Health Plans, Inc.*, 263 Conn. 191, 204, 819 A.2d 227 (2003); see also Practice Book §§ 61-10 and 66-5.