JEFFREY SAYE *v.* JOHN HOWE ET AL.
(AC 25884)

Lavery, C. J., and Bishop and Peters, Js.

Argued September 20—officially released December 20, 2005

*Martin E. Karlinsky*, pro hac vice, with whom were *David R. Schaefer* and, on the brief, *Victoria Hackett*, for the appellant (plaintiff).

*A. Robert Fischer*, with whom were *Alison Jacobs Wice* and, on the brief, *Daniel Green*, for the appellees (defendants).

*Opinion*

BISHOP, J. The plaintiff, Jeffrey Saye, appeals from the judgment of the trial court rendered in favor of the defendants, John Howe and Old Hill Partners, Inc. (corporation). On appeal, the plaintiff claims that the court improperly (1) construed the parties' written shareholder agreement not to require that the net profits of the corporation be shared according to each shareholder's interest in the corporation, (2) held that the written shareholder agreement had not been modified, (3) rejected the plaintiff's claim for breach of the written shareholder agreement and (4) rejected the plaintiff's

claim for recovery under a promissory estoppel theory. We affirm the judgment of the trial court.

The record reveals the following facts and procedural history pertinent to our resolution of the issues at hand. Howe is the founder, president and majority shareholder of the corporation, an investment management company. In February, 2000, the plaintiff commenced employment with the corporation as an investment portfolio manager and acquired an interest in 15 percent of the corporation's stock. The parties memorialized the terms of their employment agreement in a document titled "summary of terms," and they also entered into a shareholder agreement that included provisions for the shareholders' voting rights and a disbursement of funds from the corporation to shareholders in accordance with the percentage of stock owned by each shareholder.

In October, 2000, the parties attempted to renegotiate the terms of the plaintiff's relationship with the corporation. Through the negotiations, the plaintiff's quest was to achieve a new written agreement that would provide for an increase in his compensation and a greater share of distributions of the corporation's profits to him than provided for in the written employment and shareholder agreements previously executed. In January, 2001, the plaintiff demanded a new written agreement encompassing new terms that the parties had discussed in their negotiations. In response, Howe submitted a proposed agreement to the plaintiff that included additional provisions that were unacceptable to the plaintiff. At that juncture, the parties' negotiations faltered. Consequently, the parties did not execute a new employment contract for the plaintiff, nor did they enter into a new written shareholder agreement.

On March 6, 2002, Howe terminated the plaintiff's employment. In conjunction with the termination, the

plaintiff received his annual salary of $150,000 for 2001 and a pro rata portion of his salary for 2002. Although two of the three corporate shareholders received distributions based on 2001 year-end profits, the plaintiff did not receive any such distributions.

In response to his discharge from employment, the plaintiff initiated the present multicount action. The first two counts alleged that the defendants had violated General Statutes § 31-72 by failing, among other things, to compensate the plaintiff "after he had completed performing additional services for [the corporation] and after bonuses [were] earned." Counts three, four and five alleged, respectively, breach of contract to pay certain compensation earned in calendar years 2001 and 2002, wrongful discharge from employment and promissory estoppel. The case was tried to the court between April 21 and 28, 2004, after which the court rendered judgment in favor of the defendants on all five counts. This appeal followed.

Because our resolution of the plaintiff's first claim is dispositive of his third claim, we address them together and address the remaining claims in turn.

I

The plaintiff first claims that the court improperly failed to consider his claim for breach of the written shareholder agreement and improperly construed that agreement as not requiring that net profits be shared according to each shareholder's interest in the corporation. Those claims are not subject to appellate review because they were not asserted at trial. Indeed, a review of the record reflects that those claims, newly made on appeal, are inconsistent with the theory under which the plaintiff prosecuted his case at trial.

In his pleadings, the plaintiff alleged, in essence, that the parties had renegotiated the terms of his original

employment and shareholder agreements, and that Howe had violated the terms of an alleged amended agreement. That is the basis on which the case was tried. The court, in response, found that the parties had not reached a subsequent agreement modifying the initial terms of the plaintiff's business relationship with the corporation.

Now, on appeal, the plaintiff asserts that Howe violated the terms of the original shareholder agreement by making distributions to the other shareholders and none to him on the basis of profits for the calendar year 2001. Because that claim was not asserted at trial, it is not subject to review on appeal.[1]

It is axiomatic that "a plaintiff may rely only upon what he has alleged [and] the right of a plaintiff to recover is limited to the allegations of his complaint. . . . What is in issue is determined by the pleadings and these must be in writing." (Internal quotation marks omitted.) *Stohlts* v. *Gilkinson*, 87 Conn. App. 634, 649–50, 867 A.2d 860, cert. denied, 273 Conn. 930, 873 A.2d 1000 (2005). "A judgment upon an issue not pleaded would not merely be erroneous, but it would be void." (Internal quotation marks omitted.) *Dubreuil* v. *Witt*, 80 Conn. App. 410, 425–26, 835 A.2d 477, aff'd, 271 Conn. 782, 860 A.2d 698 (2004). As such, claims not presented to or addressed by the trial court are not properly before us and, thus, not ordinarily considered by this court. See *Connecticut Ins. Guaranty Assn.* v. *Union Carbide*

---

[1] The court stated in its memorandum of decision that "the gravamen of the plaintiff's action is that [the corporation] breached oral modifications to the shareholder agreement and summary of terms . . . ." The plaintiff and his attorney, at the prejudgment remedy hearing, conceded that there was no claim under the shareholder's agreement, but rather the modified shareholder's agreement. The following colloquy ensued between the plaintiff and his attorney:

[The Plaintiff's Counsel]: "[A]re you claiming a breach of the shareholder's agreement in your complaint?"

[The Plaintiff]: "I am not."

*Corp.*, 217 Conn. 371, 385, 585 A.2d 1216 (1991); *Benedetto* v. *Wanat*, 79 Conn. App. 139, 152, 829 A.2d 901 (2003); see also Practice Book § 60-5. As the facts and circumstances here do not warrant a deviation from that general rule, we will not review these claims. See *Benedetto* v. *Wanat*, supra, 152.

## II

The plaintiff next argues that the court improperly held that the parties did not modify the shareholder agreement to provide for an augmented profit sharing scheme. Specifically, the plaintiff takes issue with the court's determinations that (1) his testimony with respect to the modifications allegedly made in November, 2000, and July 20, 2001, was not credible, (2) the alleged November, 2000, and July, 20, 2001 modifications were conditioned on the result of the parties' negotiations and the execution of a subsequent written agreement, and (3) there was insufficient consideration to support the formation of a modified contract. We are not persuaded.[2]

As a preliminary matter, we set forth the applicable standard of review. "Our standard of review of challenges to the court's findings of fact and legal conclusions is well established. To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous." (Internal quotation marks omitted.) *Savings Bank of Manchester* v. *Ralion Financial Services, Inc.*, 91 Conn. App. 386, 389, 881 A.2d 1035 (2005). "Whether a contract or a subsequent modification exists is a question of fact for the court to determine. . . . If the fac-

---

[2] Because we determine that the court's conclusion that the parties did not, in fact, reach an agreement modifying the written terms of the original employment contract or the shareholder agreement, we need not reach the plaintiff's subordinate claim that the court incorrectly found that the plaintiff failed to prove consideration for the alleged oral modifications to the parties' original business agreements.

tual basis of the court's decision is challenged, our review includes determining whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." (Citations omitted; internal quotation marks omitted.) *Keefe* v. *Norwalk Cove Marina, Inc.*, 57 Conn. App. 601, 605–606, 749 A.2d 1219, cert. denied, 254 Conn. 903, 755 A.2d 881 (2000).

A

The plaintiff first claims that the court improperly found that the plaintiff's testimony regarding the alleged November, 2000, and July 20, 2001 modifications was not credible. It is axiomatic that the "trial court is free to accept or reject, in whole or in part, the evidence presented by any witness, having the opportunity to observe the witnesses and gauge their credibility." (Internal quotation marks omitted.) *Jo-Ann Stores, Inc.* v. *Property Operating Co., LLC*, 91 Conn. App. 179, 191, 880 A.2d 945 (2005). In addition, "[t]he probative force of conflicting evidence is for the trier to determine. . . . In a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony." (Internal quotation marks omitted.) *ACMAT Corp.* v. *Greater New York Mutual Ins. Co.*, 88 Conn. App. 471, 481, 869 A.2d 1254, cert. denied, 274 Conn. 903, 876 A.2d 11 (2005). "[T]his court does not second guess a trial court's assessment of credibility." *Morris* v. *Cee Dee, LLC*, 90 Conn. App. 403, 417, 877 A.2d 899, cert. granted on other grounds, 275 Conn. 929, 883 A.2d 1245 (2005).

In this instance, the court heard conflicting testimony regarding whether the parties' original agreements were later modified, as claimed by the plaintiff. On one hand, the plaintiff asserted that the shareholder and employment agreements had been modified as a result of con-

versations he had had with Howe in the fall of 2000 during which Howe allegedly promised him 25 percent of the net income of the corporation. In support of his claim, the plaintiff referred to the fact that he had received a bonus of 25 percent for the success of his efforts in 2000 and argued that his receipt of that bonus proved that the parties had, in fact, renegotiated their original arrangement. On the other hand, Howe denied that the parties had reached an agreement to modify the plaintiff's initial terms of employment. Howe claimed, rather, that he had paid the plaintiff a bonus for 2000 beyond the amount required by either the plaintiff's employment contract or the shareholder agreement on the basis of the merits of the plaintiff's efforts and also as a demonstration of his willingness to negotiate a new shareholder agreement. Howe also testified that during the negotiations, he proposed that the plaintiff agree to a noncompete clause because he wanted the plaintiff to make a substantial commitment to him and to the corporation in return for providing an enhanced financial arrangement. Faced with that conflicting testimony, the court credited Howe, reasoning that "[i]t is illogical to think that Howe, who had established the company from scratch . . . would hand over a significant percentage of the company to the plaintiff without expecting additional consideration . . . ." The court concluded that "there was no meeting of the minds concerning a modification of the original contract . . . ."

On the basis of the record before us, we cannot conclude that the court's factual finding that there was no "meeting of the minds" concerning a modification of the original contracts was clearly erroneous.

## B

The plaintiff next claims that the court improperly found that the willingness of Howe to modify the terms

of the plaintiff's employment was conditioned on the successful completion of all of the parties' negotiations and the execution of a written document setting forth the newly agreed on terms of the parties' business relationship. At trial, the plaintiff argued that during renegotiations, Howe had agreed to a 69/25 percent income division and a 69/25/6 percent division (the 6 percent going to a third shareholder in the corporation) with respect to earnings derived from a new hedge fund created by the corporation and that the plaintiff had accepted that offer. In support of his claim, the plaintiff presented an e-mail sent to him by Howe on July 20, 2001, acceding to the new distribution formula. Howe argued, however, that the e-mail was not intended to be a stand-alone offer, but that it was his intent that this new arrangement would go into effect only as part of a comprehensive resolution between the parties of all the issues under discussion.

"It is within the province of the trial court, when sitting as the fact finder, to weigh the evidence presented and determine the credibility and effect to be given the evidence. . . . Credibility must be assessed . . . not by reading the cold printed record, but by observing firsthand the witness' conduct, demeanor and attitude. . . . An appellate court must defer to the trier of fact's assessment of credibility because [i]t is the [fact finder] . . . [who has] an opportunity to observe the demeanor of the witnesses and the parties; thus [the fact finder] is best able to judge the credibility of the witnesses and to draw necessary inferences therefrom." (Internal quotation marks omitted.) *Martin Printing, Inc.* v. *Sone*, 89 Conn. App. 336, 347–48, 873 A.2d 232 (2005).

The court credited Howe's testimony and rejected the plaintiff's contention that the parties had, in fact, concluded a new agreement modifying the terms of the plaintiff's business relationship with the corporation.

The court viewed the e-mail between the parties discussing a new fee sharing arrangement as an offer from Howe that was dependent on the attainment of a global arrangement modifying the terms and conditions of the parties' original arrangement. The court found that "[t]he weight of [the] evidence demonstrates that the information contained in this e-mail is a reiteration by Howe of a number of issues discussed by the parties during their efforts to reach a comprehensive agreement. . . . [The parties] were vigorously attempting to reach a meeting of the minds concerning a new comprehensive shareholder agreement; these efforts were unsuccessful." (Citations omitted.)

In light of the foregoing, the court's finding that the oral offers made by Howe to the plaintiff in the course of their negotiations were conditioned on the execution of a comprehensive agreement was not clearly erroneous.

### III

The plaintiff's final claim is that the court improperly rejected his claim for recovery under a promissory estoppel theory. We disagree.

The following legal principles govern our analysis of the plaintiff's claim. "Under the law of contract, a promise is generally not enforceable unless it is supported by consideration. . . . [Our Supreme Court] has recognized, however, the development of liability in contract for action induced by reliance upon a promise, despite the absence of common-law consideration normally required to bind a promisor. . . . Section 90 of the Restatement [(Second) of Contracts] states that under the doctrine of promissory estoppel [a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only

by enforcement of the promise. . . . A fundamental element of promissory estoppel, therefore, is the existence of a clear and definite promise which a promisor could reasonably have expected to induce reliance. Thus, a promisor is not liable to a promisee who has relied on a promise if, judged by an objective standard, he had no reason to expect any reliance at all. . . .

"Although the promise must be clear and definite, it need not be the equivalent of an offer to enter into a contract because [t]he prerequisite for . . . application [of the doctrine of promissory estoppel] is a *promise* and not a bargain and *not* an *offer*. . . . This, of course, is consistent with the principle that, although [a]n offer is nearly always a promise . . . all promises are not offers. . . .

"Additionally, the promise must reflect a present intent to commit as distinguished from a mere statement of intent to contract in the future. . . . [A] mere expression of intention, hope, desire, or opinion, which shows no real commitment, cannot be expected to induce reliance . . . and, therefore, is not sufficiently promissory. The requirements of clarity and definiteness are the determinative factors in deciding whether the statements are indeed expressions of commitment as opposed to expressions of intention, hope, desire or opinion." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Stewart* v. *Cendant Mobility Services Corp.*, 267 Conn. 96, 104–106, 837 A.2d 736 (2003). "[T]he question of whether statements are promissory should be considered as a question of fact, and factual conclusions will be reversed only when there is insufficient evidence to support them." *Torosyan* v. *Boehringer Ingelheim Pharmaceuticals, Inc.*, 234 Conn. 1, 17 n.6, 662 A.2d 89 (1995).

In support of his argument that the court improperly rejected his promissory estoppel claim, the plaintiff

argues that Howe's promise to offer him additional compensation, the 69/25 percent division, "reasonably induced reliance in that [the plaintiff] . . . although an at-will employee . . . continued to contribute to the success of [the corporation] . . . ." As noted, however, the court did not credit the plaintiff's testimony that Howe promised him a significant portion of the business. Rather, the court found that Howe had promised only to negotiate a new contract with the plaintiff that might have incorporated increased earnings and a new distribution formula, but that Howe's willingness was conditioned on the ability of the parties to reach a complete agreement and to reduce it to writing.

The court found that the plaintiff did not change his position or status with the corporation in reliance on any representations by Howe. Additionally, the court noted that during the parties' negotiations, the plaintiff had threatened to quit and to move to California. The court observed that although the plaintiff might have remained at the corporation longer than he might have if Howe had not originally agreed to renegotiate with him, the plaintiff suffered no injury by continuing with the corporation during the ultimately unsuccessful negotiations.

Applying the foregoing principles to the facts reasonably found by the court, we conclude that there was sufficient evidence to support the court's conclusion that the plaintiff failed to establish a promissory estoppel claim.

The judgment is affirmed.

In this opinion the other judges concurred.