TORRINGFORD FARMS ASSOCIATION, INC., ET AL.
*v.* CITY OF TORRINGTON
(AC 22254)

Lavery, C. J., West and Peters, Js.

Argued December 9, 2002—officially released March 18, 2003

*Charles F. Brower*, for the appellants (plaintiffs).

*Ralph W. Johnson III*, with whom, on the brief, were *John B. Farley, Brian P. Leaming* and *Salvatore N. Fornaciari*, for the appellee (defendant).

*Opinion*

PETERS, J. Pursuant to General Statutes § 52-576 (a),[1] the statute of limitations for contract actions, a plaintiff must initiate an action for breach of contract within six years of the date of the alleged breach. *Tolbert* v. *Connecticut General Life Ins. Co.*, 257 Conn. 118, 124–25, 778 A.2d 1 (2001). The issue in this appeal is whether § 52-576 (a) applies to an action for breach of contract that is based on a claim of promissory estoppel. The trial court held the statute to be applicable in light of analogous statutes of limitation that govern equitable claims. In our view, § 52-576 (a) applies directly to a claim of promissory estoppel because such a claim is a claim for breach of contract. We agree with the court's judgment in favor of the defendant.[2]

---

[1] General Statutes § 52-576 (a) provides: "No action for an account, or on any simple or implied contract, or on any contract in writing, shall be brought but within six years after the right of action accrues, except as provided in subsection (b) of this section."

[2] Although we disagree with the trial court's reasoning, we affirm the court's judgment "because it reached the right result, even if it did so for the wrong reason." *Kalas* v. *Cook*, 70 Conn. App. 477, 485, 800 A.2d 553 (2002); see also *Flagg Energy Development Corp.* v. *General Motors Corp.*, 244 Conn. 126, 151, 709 A.2d 1075 (1998).

On November 17, 1999, the plaintiffs, Torringford Farms Association, Inc. (Torringford I), and Torringford Farms II Association, Inc. (Torringford II), filed a complaint against the defendant city of Torrington. The plaintiffs are associations of owners of units in common interest communities in Torrington. They alleged that the defendant had issued and recorded documents containing a requirement that the developer provide a "road bond" for their benefit. They claimed that these actions constituted a representation to all purchasers, presently and in the future, that roads within the development would be protected by such a bond. Accordingly, they claimed that the defendant was liable to the plaintiffs for its failure to assure that the developer posted such a bond. The basis for their action was a claim of promissory estoppel.[3]

The defendant filed a motion to strike,[4] which the court, *Frazzini, J.*, denied. Thereafter, the defendant filed responsive pleadings, including five special defenses alleging, inter alia, that the plaintiffs' action was barred by the applicable statute of limitations. The defendant then filed a motion for summary judgment on that ground and others.[5]

On August 15, 2001, the court, *Matasavage, J.*, granted the defendant's motion for summary judgment

---

[3] In their initial complaint, the plaintiffs also claimed that the defendant was liable because it had made intentional misrepresentations. In an amended complaint, the plaintiffs dropped this claim.

[4] On March 15, 2000, the defendant filed a motion to strike the complaint for failure to join the developer as a necessary party and for failure to sufficiently allege a claim for fraud or intentional misrepresentation. The court denied the motion, concluding that the developer was not a necessary party and that the plaintiffs' complaint sufficiently supported its substantive claims.

[5] The defendant's additional grounds for summary judgment included: (1) the plaintiffs cannot establish a claim of promissory estoppel; (2) the defendant does not owe a duty to the plaintiffs for its alleged failure to ensure that the developer posted a road bond; and (3) the doctrine of governmental immunity protects the defendant from suit.

because the plaintiffs' action was untimely. The plaintiffs have appealed from that judgment.

The plaintiffs' appeal is governed by a well established standard of review. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court." (Citation omitted; internal quotation marks omitted.) *Gold* v. *Greenwich Hospital Assn.*, 262 Conn. 248, 253, 811 A.2d 1266 (2002). "Summary judgment may be granted where the claim is barred by the statute of limitations." *Doty* v. *Mucci*, 238 Conn. 800, 806, 679 A.2d 945 (1996).

The relevant facts are undisputed. The plaintiffs are associations of owners of units in common interest communities in Torrington. They own the roads within these communities.

The Torrington planning and zoning commission (commission) approved the plaintiffs' subdivision applications for Torringford I on January 25, 1989, and for Torringford II on February 14, 1990. The commission conditioned its approval of both applications on the

posting of a "road bond" by the developer within forty-five days of each decision. The plaintiffs were notified of the commission's decisions by letter on January 26, 1989, and February 22, 1990, respectively. The approvals were included with the declarations and public offering statements recorded on the land records.

The developer did not post any bond with respect to the private roads running through the communities. It did, however, post a letter of credit to ensure the completion of the sanitary and sewer systems serving the developments. The plaintiffs apparently were under the misimpression that the "road bond" condition referred to their roads rather than to the required sanitary systems.[6] After the recordation of the declaration and public offering statement, the developer completed his work and sold the properties to the intended purchasers. The roads have deteriorated.

The defendant learned that the developer had not posted a bond for the private roads on April 8, 1992. The plaintiffs learned of this fact no later than September, 1992. Their knowledge is reflected in minutes of meetings held by Torringford I and II on August 19, 1993, and September 20, 1992, respectively.[7]

---

[6] Because the plaintiffs no longer claim that the defendant misrepresented the nature of the bond that it required the developer to post, the plaintiffs have not alleged that the defendant bore responsibility for their misimpression.

[7] The minutes of the meeting held by Torringford I on August 19, 1993, provide in relevant part: "Lucas Perea reported on the meeting he had with the Mayor of Torrington. . . . The city verified that there was no bond posted for the roads. The bond that was posted by the Developer was for the sewers. The community's roads [cannot] be deeded over to the city for a variety of reasons."

Similarly, the minutes of the meeting conducted by Torringford II on September 20, 1992, state in relevant part: "As has been discussed in the past, the final paving of the road is of some concern since the Developer has not posted a bond for the final paving. The primary common property of [Torringford II] is the road and, since this has not received the final paving and is essentially falling apart in some areas, the Association may at some point have to repair or completely repave the road. The Association would then have to go after the Developer to recover the money."

On appeal, the plaintiffs argue that the court improperly applied § 52-576 (a) to their action against the defendant. Specifically, the plaintiffs assert that because their action is one of equity, the court should not have applied any statute of limitations. In the alternative, the plaintiffs argue that, even if § 52-576 (a) were to apply, their cause of action did not accrue until the completion of their subdivisions.

This appeal requires us to determine whether a claim of promissory estoppel is, as the plaintiffs allege, an equitable action or, as the defendant maintains, an action at law. This is not a question of first impression. Our Supreme Court has already addressed it in *D'Ulisse-Cupo* v. *Board of Directors of Notre Dame High School*, 202 Conn. 206, 520 A.2d 217 (1987).

In *D'Ulisse-Cupo*, the Supreme Court explained that "[u]nder the law of contract, a promise is generally not enforceable unless it is supported by consideration. . . . This court has recognized, however, the development of liability in contract for action induced by reliance upon a promise, despite the absence of common-law consideration normally required to bind a promisor . . . . Section 90 of the Restatement Second [Contracts (1981)] states that *under the doctrine of promissory estoppel,* [a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. A fundamental element of promissory estoppel, therefore, is the existence of a clear and definite promise which a promisor could reasonably have expected to induce reliance. Thus, a promisor is not liable to a promisee who has relied on a promise if, judged by an objective standard, he had no reason to expect any reliance at all." (Citations omitted; emphasis added; internal quotation marks omitted.) Id., 213; see also *Pavliscak* v. *Bridge-*

*port Hospital,* 48 Conn. App. 580, 592–93 n.5, 711 A.2d 747, cert. denied, 245 Conn. 911, 718 A.2d 17 (1998).[8]

*D'Ulisse-Cupo* controls the present case. The doctrine of promissory estoppel serves as an alternative basis to enforce a contract in the absence of competing common-law considerations. *D'Ulisse-Cupo* v. *Board of Directors of Notre Dame High School,* supra, 202 Conn. 213. For actions for breach of contract, it is the legislature that has determined the time period in which a cause of action must be brought. Only in actions that fairly can be characterized as invoking equitable considerations may a court consider the applicability of concepts of fairness and equity, usually by invoking the doctrine of laches. See *Dunham* v. *Dunham,* 204 Conn. 303, 326–27, 528 A.2d 1123 (1987), overruled in part on other grounds, *Santopietro* v. *New Haven,* 239 Conn. 207, 213 n.8, 682 A.2d 106 (1996); *Giordano* v. *Giordano,* 39 Conn. App. 183, 214–16, 664 A.2d 1136 (1995).[9] The trial court, therefore, should have applied

---

[8] Aside from demonstrating the existence of a "clear and definite promise," a plaintiff asserting a claim of promissory estoppel must also establish two additional elements: "the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury. . . . It is fundamental that a person who claims an estoppel must show that he has exercised due diligence to know the truth, and that he not only did not know the true state of things but also lacked any reasonably available means of acquiring knowledge. . . . In addition, estoppel against a public agency is limited and may be invoked: (1) only with great caution; (2) only when the action in question has been induced by an agent having authority in such matters; and (3) only when special circumstances make it highly inequitable or oppressive not to estop the agency." (Citations omitted; internal quotation marks omitted.) *Chotkowski* v. *State,* 240 Conn. 246, 268–69, 690 A.2d 368 (1997).

We note that the plaintiffs' action may not satisfy the fundamental element of promissory estoppel that the defendant has made a promise to the plaintiff. It is by no means clear that approval of a condition in a subdivision application is a promise to subsequent subdivision purchasers.

[9] The defendant also argues that the plaintiffs' action is really one of fraud or misrepresentation and, accordingly, the three year statute of limitations for tort actions under General Statutes § 52-577 should apply. In light of

§ 52-276 (a) directly, rather than by way of analogy to the rules governing equitable claims.

Pursuant to § 52-576 (a), "[n]o action . . . on any simple or implied contract, or on any contract in writing, shall be brought but within six years after the right of action accrues . . . ." The law concerning the time when a breach of contract action accrues is well settled. "[I]n an action for breach of contract . . . the cause of action is complete at the time the breach of contract occurs, that is, when the injury has been inflicted. . . . Although the application of this rule may result in occasional hardship, [i]t is well established that *ignorance of the fact that damage has been done does not prevent the running of the statute,* except where there is something tantamount to a fraudulent concealment of a cause of action." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Tolbert* v. *Connecticut General Life Ins. Co.,* supra, 257 Conn. 124–25.[10]

The trial court properly determined that the plaintiffs did not commence this action within the time period allotted by § 52-576 (a). As noted, the parties did not dispute the operative facts. The plaintiffs' evidence established that, on April 8, 1992, the defendant knew that the developer had not posted a bond for the roads within the developments. The six year period commenced from that date because it was then that the defendant knew of the developer's alleged omission. It follows that April 8, 1992, is the date when the defendant allegedly failed to fulfill its promise to ensure that the roads would be protected by a bond in accordance with

our conclusion that the plaintiffs' action sounds in contract, we conclude that § 52-577 does not apply to this case.

[10] The plaintiffs do not claim that their action for promissory estoppel can be characterized as a tort claim. A tort claim, unlike a contract claim, does not accrue until the plaintiff discovered or should have discovered that he has been injured. *Tarnowsky* v. *Socci,* 75 Conn. App. 560, 816 A.2d 728 (2003).

the approved subdivision applications.[11] The plaintiffs' lawsuit, filed on November 17, 1999, was, therefore, untimely because it was filed more than seven years after their cause of action had accrued.

The judgment is affirmed.

In this opinion the other judges concurred.

[11] Although irrelevant as a matter of law, the plaintiffs knew of the alleged omission by September 20, 1992.