Rose Anna SHEPHEARD, Plaintiff,

v.

The CITY OF NEW YORK, New York
City Correction Department,
Defendants.

No. 04 Civ. 0326(VM).

United States District Court,
S.D. New York.

Sept. 12, 2008.

Rose Anna Shepheard, Pro se.

Joanna Ruth Helferich, Christopher Aaron Seacord, New York City Law Department, New York City, for Defendants.

### DECISION AND ORDER

VICTOR MARRERO, District Judge.

Pro se plaintiff Rose Anna Shepheard ("Shepheard") brought this action against defendants the New York City Department of Correction (the "DOC"), and the City of New York (collectively, "Defendants"), alleging that Defendants discriminated and retaliated against her in violation of the Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. § 12112 *et. seq.* Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56 ("Rule 56"). For the reasons stated below, Defendants' motion is GRANTED.

### I. BACKGROUND[1]

Shepheard was employed with the DOC as a correction officer beginning October

---

1. The factual summary that follows derives primarily from the Second Amended Com-

1986, and she was promoted to the rank of Captain in July 1993. Shepheard was the recipient of awards from the DOC from 1989 through 1993, including several certificates of achievement. However, beginning in 1993, Shepheard received disciplinary charges on several occasions for various violations of the DOC s rules and regulations, including instances of sick leave violations, excessive absence, and failure to efficiently perform her duties. In connection with some of these alleged violations, Shepheard received various penalties for her alleged misconduct, including loss of vacation days. In August 1999, the DOC determined that Shepheard was psychologically unfit to possess or carry a firearm.

Shepheard was on sick leave from May 2000 through August 2000 because she underwent surgery, and from May 2001 through June 2001 because of another medical condition. Upon her return in June 2001, Defendants' Health Management Division (the "HMD") placed Shepheard on Medical Monitored Return Status Category II ("MMR II"), indicating that Shepheard had some physical limitations that affected her ability to perform her duties as a Captain. In or about June 2001, Shepheard requested assignment to the midnight tour, rather than rotating shifts, at DOC's West Facility (the "West Facility") at Rikers because Shepheard alleges that she was experiencing several side effects, including hot flashes and profuse sweating, from medication she was prescribed in connection with a medical condition. The DOC granted Shepheard's request.

In November 2001, the HMD changed Shepheard's status from MMR II to MMR III, meaning that Shepheard suffered from serious physical and/or psychological limitations, and Shepheard was prohibited from having any contact with inmates.

On December 8, 2001, Shepheard was transferred to the James A. Thomas Center (the "JATC") at Rikers at the request of the Assistant Deputy Warden of the West Facility (the "Deputy Warden"). According to the Deputy Warden, he requested Shepheard's transfer because of a recent downsizing at the West Facility, and Shepheard's medical and psychological restrictions prohibited her from serving in either of the two posts available during the midnight tour. Shortly after she arrived at the JATC, Shepheard reported sick and left the JATC, alleging that she felt "closed in," causing her to sweat excessively. (Shepheard Dep. Tr. 83:18–84:22, dated Jan. 18, 2007 ("Shepheard Dep."), attached as Ex. B to Defs.' 56.1 Statement.)

On December 10, 2001, Shepheard reported to the HMD to discuss her transfer to the JATC. The HMD reclassified Shepheard as MMR II, transferred her back to the West Facility, and requested that she be assigned to the midnight tour. Although it is unclear from the record, it appears that Shepheard may have returned to work at the West Facility from December 19, through December 23, 2001. From December 24, 2001 through her termination, in February 2004, Shepheard was on sick leave or suspended. (*See* Report and Recommendation, dated November 6, 2003 ("Report and Recommendation"), attached as Ex. GGG to Defs.' 56.1 Statement, at 5.)

plaint, filed June 14, 2004 (the "Complaint"); the Defendants' Statement Pursuant to Local Civil Rule 56.1, dated June 6, 2008 ("Defs.' 56.1 Statement"); the Declaration of Dr. Peter Theo ("Theo."), dated June 6, 2008 ("Theo Decl."); the Declaration of Assistant Corpora-

tion Counsel Christopher A. Seacord, dated June 6, 2008; and Shepheard's Motion to Dismiss Summary Judgment, dated September 5, 2007. Except where specifically referenced, no further citation to these sources will be made.

In April 2002, while Shepheard was on sick leave, she submitted a formal request for a reasonable accommodation (the "Reasonable Accommodation Request") to DOC's Equal Employment Opportunity Office (the "EEO Office"). Specifically, Shepheard requested that she be assigned to midnight tours at the West Facility because the medication she was prescribed caused her "grogginess and lack of concentration in the morning," and that assignment to midnight tours would "allow [her] to continue therapy sessions." (Reasonable Accommodation Request Form, dated April 2002, attached as Ex. KK to Defs.' 56.1 Statement, at 1.) By letter dated September 3, 2002 (the "September 2002 Letter"), DOC's Disability Rights Coordinator, Irma Ozer ("Ozer"), informed Shepheard that the EEO Office could not grant her Reasonable Accommodation Request unless the HMD determined that Shepheard was able to return to work. The September 2002 Letter also stated that Ozer "had no choice but to administratively file [Shepheard's] request due to the impossibility of assisting [her] while [she] was out sick," and that Shepheard should contact Ozer when she was classified as at least MMR 1 status. (September 2002 Letter, attached as Ex. UU to Defs.' 56.1 Statement.)

By notice dated October 28, 2002 (the "Termination Notice"), the DOC informed Shepheard that it intended to pursue medical separation/termination from her employment at the DOC. In December 2002 and January 2003, Shepheard was served with disciplinary charges alleging six instances of misconduct in connection with various sick leave violations and excessive absence allegations. On November 6, 2003, after a hearing before a DOC Administrative Law Judge ("ALJ"), the ALJ issued a Report and Recommendation, finding that four of the six charges against Shepheard were substantiated, and that, after taking into account the nature of the

charges as well as Shepheard's medical and disciplinary history, "termination [was] the only appropriate penalty." (Report and Recommendation, at 30–31.)

The ALJ also made findings of facts and conclusions of law, including: (1) on May 24, 2002, Shepheard was out-of-residence while on sick leave when a home visit was conducted, in violation of DOC Directive 2262R ("Directive 2262R"); (2) on May 24, 2002, Shepheard failed to "log out and in" with the HMD, as required by Directive 2262R; (3) On June 7, 10, 14 and 17, 2002, Shepheard failed to report to the HMD, as ordered, to retrieve her shield and identification following a period of suspension from her position as a Captain, in violation of DOC Rule 3.05.100; (4) Shepheard failed to appear for a scheduled appointment at the HMD on November 12, 2002, in violation of Directive 2262R; (5) Shepheard was absent for 178 days from May 11, 2001 through June 18, 2002, continued to be absent, and such absences were excessive and in violation of Directives 2258R–A and 2262R. (*Id.* at 28–29.) Shepheard was informed by letter dated February 2, 2004 from the DOC Commissioner that he had accepted the Report and Recommendation, and that Shepheard was dismissed from her position with the DOC.

On December 26, 2002, Shepheard filed a complaint (the "NYSDHR Complaint") against Defendants with the New York State Division of Human Rights (the "NYSDHR"), alleging that Defendants improperly denied her Reasonable Accommodation Request, in violation of New York State Human Rights Law, Executive Law § 290. Several days later, Shepheard duly filed the NYSDHR Complaint with the United States Equal Opportunity Commission (the "EEOC Charge"). On August 4, 2003, Shepheard received a right-to-sue letter (the "Right–to–Sue Letter") from the United States Department of Justice

(the "DOJ") in connection with the EEOC Charge. By Order dated September 14, 2004 ("NYSDHR Order"), the NYSDHR dismissed the NYSDHR Complaint, finding that there "was no probable cause to believe that [Defendants have] engaged in or [are] engaging in the unlawful discriminatory practice complained of." (N.Y.SDHR Order, attached as Ex. MMM to Defs.' 56.1 Statement, at 1.)

## II. *DISCUSSION*

### A. *LEGAL STANDARD*

In connection with a Rule 56 motion, "[s]ummary judgment is proper if, viewing all the facts of the record in a light most favorable to the non-moving party, no genuine issue of material fact remains for adjudication." *Samuels v. Mockry,* 77 F.3d 34, 35 (2d Cir.1996) (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The role of a court in ruling on such a motion "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. United States Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986). The moving party bears the burden of proving that no genuine issue of material fact exists or that by reason of the paucity of evidence presented by the non-movant, no rational jury could find in favor of the non-moving party. *See Gallo v. Prudential Residential Servs.,* 22 F.3d 1219, 1223 (2d Cir.1994).

■ In the case of a pro se litigant, district courts are instructed to read the pleadings "liberally and interpret them to raise the strongest arguments that they suggest." *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999) (citation and quotation marks omitted). However, "application of this different standard does not relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." *Jorgensen v. Epic/Sony Records,* 351 F.3d 46, 50 (2d Cir.2003) (citation and quotation marks omitted).

### B. *DISCRIMINATION CLAIMS*

Shepheard claims that Defendants discriminated and retaliated against her, in violation of the ADA. Specifically, Shepheard alleges that Defendants: (1) improperly denied her Reasonable Accommodation Request for her alleged disability (major depression and anxiety) (the "Reasonable Accommodation Claim"); (2) unlawfully terminated her (the "Termination Claim"); (3) subjected her to unequal terms and conditions of her employment (the "Unequal Conditions Claim"); and (4) retaliated against her (the "Retaliation Claim"). Defendants contend that Shepheard's Reasonable Accommodation Claim should be dismissed because Shepheard cannot establish all the elements of a *prima facie* case of discrimination under the ADA. With respect to the remaining claims, Defendants contend that these claims should be dismissed because they were not included in the EEOC Charge, nor are they reasonably related to the claims therein. Alternately, Defendants contend that, even assuming all of Shepheard's claims are sufficiently related to the allegations in the EEOC Charge, they fail as a matter of law.

#### 1. *The Reasonable Accommodation Claim*

Defendants allege that Shepheard cannot establish a prima facie case under the ADA. Specifically, Defendants contend that Shepheard was not disabled within the meaning of the ADA because she cannot prove that her depression and anxiety substantially limited one or more of her major life activities and, even assuming that she was disabled within the meaning

of the ADA, that Shepheard cannot demonstrate that she was qualified to perform the essential functions of her position at DOC as a Captain with or without a reasonable accommodation. The Court agrees.

■ To state a prima facie case of discrimination under the ADA, a plaintiff bears the burden of establishing that: (1) the employer is covered by the ADA; (2) the employee has a disability within the meaning of the ADA; (3) the employee was qualified to perform the essential functions of his position, with or without reasonable accommodation; and (4) the employee suffered an adverse employment action because of his disability. *See Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 869–70 (2d Cir.1998). A disability under the ADA is defined as (A) "a physical or mental impairment that substantially limits one or more of the major life activities of [an individual];" (B) "a record of such an impairment;" or (C) "being regarded as having such impairment." 42 U.S.C. § 12102(2). "The employer may defeat the prima facie case, however, by demonstrating that making the proposed accommodation would result in undue hardship." *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 99 (2d Cir.1999) (citation omitted).

■ "Essential functions are defined under EEOC regulations to mean the fundamental duties to be performed in the position in question, but not functions that are merely marginal." *Shannon v. New York City Transit Auth.*, 332 F.3d 95, 100 (2d Cir.2003) (citations and quotation marks omitted). In determining whether a plaintiff could perform the essential functions of her position, "[a] court must give considerable deference to an employer's judgment regarding what functions are essential for service in a particular position." *D'Amico v. City of New York*, 132 F.3d 145, 151 (2d Cir.1998) (*citing Doe v. New York Univ.*, 666 F.2d 761, 776 (2d Cir.

1981)). In addition, the determination "is based on a prospective comparison of the employee's ability to perform and the abilities of non-disabled individuals to perform," and "[a] court necessarily must consider both the type of position for which the plaintiff claims to be otherwise qualified, and the consequences of a potential mishap." *D'Amico*, 132 F.3d at 151 (citations omitted). While a reasonable accommodation may include adjustments such as the modification of physical facilities, work schedules or equipment or job restructuring, reasonable accommodation does not mean the elimination of any of the position's essential functions. *See Gilbert v. Frank*, 949 F.2d 637, 642 (2d Cir.1991) (citation omitted).

■ Here, there is not sufficient evidence on the record indicating that Shepheard could have performed the essential functions of her position as a Captain with or without a reasonable accommodation from the time Shepheard formally requested a reasonable accommodation in April 2002 through the time she was terminated, in February 2004, (the "Relevant Time Period").

Shepheard claims that, during the Relevant Time Period, her depression caused her to suffer from various symptoms, including: anxiety, irritability, insomnia, emotional instability, fluctuating moods, poor focus and concentration, chronic fatigue, and emotional reactivity to her environment. (*See* Shepheard Pep. 144:1–4; Psychological Summary prepared by Theo, dated October 18, 2002 ("Psychological Summary"); Theo Decl. ¶¶ 4–7.) In addition, Shepheard alleges that in 2002 she would sleep from approximately 9:00 p.m. to 4:00 p.m., that is, nineteen hours per day. (*See* Shepheard Decl. 105:14–24.)

In October 2002, Theo, the HMD psychologist who examined Shepheard on a regular basis from December 2001 through February 2004, submitted the Psychologi-

cal Summary explaining that Shepheard was psychologically unfit to return to return to work. Specifically, Theo noted that:

> Shepheard has complained of depression, anxiety, poor focus, and concentration, fluctuating moods, insomnia, anhedonia, and irritability. She has reported "an inability to think straight" and often seems preoccupied and dysphoric. She has been prescribed numerous psychotropic medications during the course of her illness without significant response. Her condition is characterized by ongoing affective instability and display of emotional reactivity to her environment. She is often irritable and her mood is mostly labile with episodic anger. There is no change in her PMD clinical diagnosis of mood disturbance and she remains unfit for work in a high-risk occupation like a Correction Office. [Return to full duty] is not expected.

(Psychological Summary.)

Theo also found, based on his assessment of Shepheard's condition and considering the fundamental functions of her position as a Captain, that Shepheard was unable to perform the essential functions of her duties. (*See* Theo Decl. ¶ 7.) As a Captain, Shepheard's duties included: (1) monitoring and overseeing the care, custody and control of inmates; (2) supervising the performance of subordinate officers; and (3) responding efficiently and effectively to alarms and other emergencies. (*See id.*) Theo explained that these tasks require an individual to "be focused, attentive, alert, and vigilant, all of which are attributes that either were impaired or lacking as a result of [Shepheard's] depression and/or the medication she was taking in order to treat that condition." (*Id.*)

■ Another essential function that would necessarily be required of a Captain is reporting to work. "As general rule, 'some degree of regular, predictable attendance is fundamental to most jobs,' ... and an employee who cannot get to work does not satisfy the essential requirements of her employment." *Aquinas v. Federal Exp. Corp.*, 940 F.Supp. 73, 78 (S.D.N.Y. 1996) (*quoting Misek–Falkoff v. IBM Corp.*, 854 F.Supp. 215, 227 (S.D.N.Y. 1994), *citing Kotlowski v. Eastman Kodak Co.*, 922 F.Supp. 790, 796 (W.D.N.Y.1996)). Here, Shepheard's attendance record evinces her inability to report to work. For example, on several occasions, Shepheard was designated "chronic absent" because of excessive absences. (Designations of Chronic Absence Reports, dated December 19, 1996, February 18, 1998, and August 1, 2001, attached as Exs. I, L, AA to Defs.' 56.1 Statement.) In addition, Shepheard was on sick leave before she submitted her Reasonable Accommodation Request, and Shepheard remained on sick leave until she was terminated.

■ Shepheard's inability to perform the essential functions required of a Captain also implicates safety concerns. *See Brennan v. New York Police Dept.*, No. 93 Civ. 8461, 1997 WL 811543, at *5 (S.D.N.Y. May 27, 1997). Whether "an individual creates a direct threat to the health or safety of others must depend on an individualized assessment of the individual's present ability to safely perform the essential functions of his job." *Id.* "Factors to be considered include: (1) duration of the risk; (2) nature and severity of the potential harm; (3) likelihood that the potential harm will occur; and (4) imminence of the potential harm." *Id.* (citations omitted). Here, Shepheard was responsible for the safety and well-being of both the inmates and fellow officers entrusted to her care and supervision. The record indicates that Shepheard's ability to perform her position, such as responding expeditiously to emergencies involving inmates, was impaired by the symptoms of her depression and/or the medication she was taking, and

that impairment threatened the safety of DOC inmates and Shepheard's fellow officers.

Shepheard concedes that she could not perform the essential functions of her position without a reasonable accommodation. Shepheard asserts, however, that if she were granted her Reasonable Accommodation Request, that is, working midnight tours rather than rotating shifts, she could perform the essential functions of her duties as a Captain.

The only evidence to support Shepheard's assertion is correspondence from Shepheard's psychiatrist, Dr. Bhaskar Nayak ("Nayak"), including: (1) a letter dated June 11, 2002 from Nayak, and clinical social worker, Selena J. Perez (the "June 2002 Letter"), stating that Shepheard had "expressed a desire to return to work," and that "[i]t is feasible that she have midnight tour (23:00 to 07:00) as she has improved energy in the late evening hours," (June 2002 Letter, attached as Ex. MM to Defs.' 56.1 Statement); and (2) a Treating Physician's Summary Report by Nayak, dated October 7, 2002 ("October 2002 Summary Report"), stating that Shepheard was able to return to light duty, provided that she was not assigned to a rotating tour. (*See* October 2002 Summary Report, attached as Ex. VV to Defs.' 56.1 Statement. *But see* Treating Physician's Summary Reports prepared by Nayak, dated May 28, July 10, and August, 8, 2002, attached as Exs. NN, PP, SS to Defs.' 56.1 Statement) (stating that Shepheard "should continue sick").

Nayak's June 2002 Letter and October 2002 Summary Report, however, do not indicate that Shepheard could have performed the essential functions of her position as a Captain during midnight tours. The parties do not dispute that Nayak's opinions were only recommendations, or

that the ultimate determination of whether Shepheard was capable of performing her duties and returning to work was to be made by the HMD. As noted above, Theo determined that that Shepheard was unable to return to work during the Relevant Time Period. Theo considered Nayak's October 2002 Summary Report in evaluating Shepheard, and he found that Nayak's report was "not terribly helpful in evaluating [Shepheard's] ability to return to duty," and that Nayak's recommendation that Shepheard could return to light duty "seemed inconsistent with his continued diagnosis of major depression disorder, and this indicated that [Nayak] did not understand the requirements of the position of a [Captain]." (Theo Decl. ¶ 6.)

Reviewing the record as a whole, including the fundamental duties required of a Captain, the medical evidence presented, and Shepheard's statements concerning her medical and psychological condition, the Court finds that no reasonable juror could conclude that Shepheard was qualified to perform the essential functions of her position as a Captain with or without a reasonable accommodation during the Relevant Time Period. Thus, Shepheard cannot establish a prima facie case under the ADA. Accordingly, the motion of Defendants to dismiss the Reasonable Accommodation Claim is GRANTED.

### 2. *The Termination, Unequal Conditions, and Retaliation Claims*

Defendants contend that Shepheard's Termination, Unequal Conditions, and Retaliation Claims should be dismissed because they are not reasonably related to the Reasonable Accommodation Claim, which is the only claim that Shepheard raised in the EEOC Charge.[2]

"In determining whether claims are reasonably related, the focus should be

---

**2.** The Court notes that Shepheard sent a letter dated February 27, 2003 (the "February 2003

Letter") to the NYSDHR containing various

on the factual allegations made in the [EEOC] charge itself, describing the discriminatory conduct about which a plaintiff is grieving." *Deravin v. Kerik*, 335 F.3d 195, 201 (2d Cir.2003) (citations and quotation marks omitted). An additional claim is reasonably related to one asserted in an EEOC charge already filed if it: (1) "is within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge;" (2) "alleges conduct which would constitute retaliation for filing a timely EEOC charge;" or (3) "alleges conduct which would constitute a further incident of discrimination perpetrated in precisely the same manner as what is alleged in the EEOC charge." *DeJesus v. Allstate Ins. Co.*, No. 96 Civ. 6073, 2001 WL 1006653, at *6 (S.D.N.Y. Aug. 30, 2001) (*citing Butts*, 990 F.2d at 1402–03); *see Burgos v. Sullivan & Cromwell*, No. 99 Civ. 11437, 2001 WL 709268, at *5 (S.D.N.Y. June 25, 2001). While the "reasonably related" exception is seen mostly in the context of cases involving Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, courts have also applied it to claims under the ADA. *See Moguel v. Covenant House/New York*, No. 03 Civ. 3018, 2004 WL 2181084, at *6 (S.D.N.Y. Sept. 29, 2004) (citations omitted).

### a. Termination Claim

█ As to Shepheard's Termination Claim, the Court finds that this claim is reasonably related to the EEOC Charge. Shepheard alleges that she was terminated from the DOC because of her disability and for requesting a reasonable accommodation. (*See* Shepheard Tr. 122:11–24.) Although her termination occurred subsequent to the DOJ issuing the Right–to–Sue Letter, Shepheard stated in the EEOC Charge that she received the Termination Notice and that it stated "if [she] did not return to full duty with no restrictions [she] would be terminated on December 28, 2002."[3] (*See* NYSDHR Complaint, at-

---

statements of fact, and alleging a laundry list of additional claims, including: unequal terms and conditions of her employment, retaliation, invasion of privacy, failure to safeguard confidential medical records, failure to educate, hostile work environment, defamation, and infliction of mental distress. (*See* February 2003 Letter, attached as Ex. 1 to Compl., at 9.) EEOC regulations "allow written statements of fact to amend a charge, but only insofar as they clarify and amplify allegations made in the original charge or allege additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge." *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 83 (2d Cir.2001) (citations and quotation marks omitted). Here, there is no indication from the record that Shepheard's EEOC Complaint was amended to include such claims or that the EEOC considered these additional claims. Moreover, the allegations contained in the February 2002 Letter concerning many of these claims are general, vague and conclusory. *See Butts*, 990 F.2d at 1403 (stating that if courts permitted "such vague, general allegations, quite incapable of

inviting a meaningful EEOC response, to define the scope of the EEOC investigation and thereby predicate subsequent claims in the federal lawsuit, such allegations would become routine boilerplate ....") (*citing Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir.1992)).

**3.** The Court notes that, in the Termination Letter, the DOC stated that Shepheard had been on medical leave since May 2001 because Shepheard was unable to perform the full duties required of her position, directed that Shepheard "resolve [her] employment status with the [DOC] on or before November 28, 2002, and explained that if Shepheard was physically and mentally fit to perform the full duties of [her] position and seek to return to work in full duty capacity with no limitations" that Shepheard "must provide specific medical documentation indicating [her] full recovery" from her disability. (Termination Notice, attached as Ex. DDD to Defs.' 56.1 Statement, at 1) The Termination Notice also stated that if Shepheard objected to the proposed medical separation/termination, she could request a hearing. (*Id.*)

tached as Ex. III to Defs.' 56.1 Statement, at 2.) Shepheard was terminated as a result of various disciplinary charges, which were related to her sick leave. The factual allegations contained in the EEOC Charge also concern Shepheard's sick leave and the DOC's conduct with respect to such leave. The Court finds that the Termination Claim "was in the scope of the EEOC investigation which can reasonably be expected to grow out of the [EEOC Charge]," and is therefore reasonably related to the EEOC Charge or the factual allegations contained therein. *DeJesus,* 2001 WL 1006653, at *6 (*citing Butts,* 990 F.2d at 1402–03).

■ However, in order for Shepheard to state a claim for discriminatory termination in violation of the ADA, Shepheard must establish a prima facie case of discrimination. *See Ryan,* 135 F.3d at 869–70. As discussed above, Shepheard failed to establish a prima facie case because she did not meet her burden of proving she could perform the essential functions of her position with or without a reasonable accommodation. Accordingly, the motion of Defendants for summary judgment as to the Termination Claim is GRANTED.

b. *Unequal Conditions Claim*

■ Shepheard alleges that she suffered unequal terms and conditions of her employment because of her alleged disability. Specifically, Shepheard asserts that, because she was on MMR status, she should not have been assigned to the housing area or the control room when another Captain, who was not on MMR status, was available for those assignments. (*See* Shepheard Dep. 124:4–6.) Shepheard also alleges that the DOC failed to follow procedure in connection with her Reasonable Accommodation Request. (*See id.* 133:11–25.)

With respect to Shepheard's allegations concerning her work assignments, the Court is not persuaded that those claims are reasonably related to S EEOC Charge. First, there were no allegations concerning Shepheard's work assignments in her EEOC Charge. Second, nothing on the record indicates the EEOC would have investigated Shepheard's work assignments in connection with her Reasonable Accommodation Claim. Shepheard was on sick leave at the time she submitted her Reasonable Accommodation Request, and she did not return to work. An investigation into her work assignments, which occurred prior to her Reasonable Accommodation Request, and were unrelated to the DOC s denial of Shepheard's request to work midnight tours, would not reasonably be expected to grow out of her EEOC Charge. Thus, to the extent that the Unequal Conditions Claim is based on Shepheard's work assignments, the Court finds that this claim is not reasonably related to the EEOC Charge or the factual allegations contained therein.

As to Shepheard's remaining allegations of the Unequal Conditions Claim—that the DOC did not follow procedure with respect to her Reasonable Accommodation Request—such allegations are merely an extension of the Reasonable Accommodation Claim. Therefore, for the same reasons stated above in connection with the Reasonable Accommodation Claim, Shepheard's Unfair Conditions Claim cannot survive summary judgment. Accordingly, the motion of Defendants for summary judgment as to Shepheard's Unfair Conditions Claim is GRANTED.

c. *Retaliation Claim*

As to Shepheard's Retaliation Claim, the Court is persuaded that this claim is not reasonably related to the Reasonable Accommodation Claim. Although Shepheard does not specify in the Complaint how she was allegedly retaliated against, she made

statements at her deposition indicating that she believed that she was terminated in retaliation for requesting an accommodation. (*See* Shepheard Dep. 132: 4–10.)

 "Courts in this district have often found that, where a plaintiff does not explicitly allege retaliation in an administrative complaint, the subsequent investigation of other forms of discrimination cannot reasonably be expected to extend to retaliation." *Burke v. Gutierrez,* No. 04 Civ. 7593, 2006 WL 89936, at *12 (S.D.N.Y. Jan. 12, 2006) (*citing Gambrell v. National R.R. Passenger Corp.,* No. 01 Civ. 6433, 2003 WL 282182, at *8 (S.D.N.Y. Feb. 3, 2003); *Cordoba v. Beau Dietl & Assocs.,* No. 02 Civ. 4951, 2003 WL 22902266, at *10 (S.D.N.Y. Dec. 8, 2003); *Moguel,* 2004 WL 2181084, at *8; *Bailey v. Colgate–Palmolive Co.,* No. 99 Civ. 3228, 2003 WL 21108325, at *13 (S.D.N.Y. May 14, 2003)); *see also Burgess v. New York Stock Exch.,* 181 F.Supp.2d 337, 340 (S.D.N.Y.2002) (stating that "[w]here the factual allegations in the administrative charges fail to raise an inference of retaliation, courts in this District and in this Circuit have consistently held that claims of retaliation are not reasonably related to claims of discrimination") (*citing O'Hara v. Memorial Sloan Kettering Cancer Ctr.,* No. 99 Civ. 2658, 2000 WL 1459798, at *5 (S.D.N.Y. Sept. 29, 2000); *Chinn v. City Univ. of New York School of Law at Queens College,* 963 F.Supp. 218, 223 (E.D.N.Y. 1997)).

 In the EEOC Charge, Shepheard did not assert retaliation as a basis for the alleged discrimination. In addition, the EEOC Charge contains no allegations or facts that would lead an investigator to inquire as to any allegedly retaliatory actions that the DOC may have taken against Shepheard. "Where the EEOC charge alleges discrimination but not retaliation, the reasonable scope of the agency's investigation cannot be expected to encompass allegations of retaliatory motive." *Gambrell,* 2003 WL 282182, at *8. Therefore, the Court finds that Shepheard's Retaliation Claim is not reasonably related to her EEOC Charge or the factual allegations contained therein. Accordingly, the motion of Defendants for summary judgment as to Shepheard's Retaliation Claim is GRANTED.

## III. *ORDER*

For the reasons discussed above, it is hereby

**ORDERED** that the motion (Docket No. 42) of defendants the New York City Department of Correction, and the City of New York, for summary judgment pursuant to Federal Rule of Civil Procedure 56 is GRANTED; and it is further

**ORDERED** that the motion (Docket No. 49) of plaintiff Rose Anna Shepheard ("Shepheard") is DENIED; and it is further

**ORDERED** that the complaint of plaintiff Rose Anna Shepheard is DISMISSED in its entirety.

The Clerk of the Court is directed to withdraw all pending motions and to close this case.

**SO ORDERED.**