Sarah H. COLBY, Executrix
for the Estate of Stuart
T. Colby, Plaintiff,

v.

PYE & HOGAN LLC a/k/a Pye & Hogan Liquidation Corp. a/k/a Pye & Hogan Machine Corp., Defendant.

No. 3:07CV00507 (DJS).

United States District Court,
D. Connecticut.

March 13, 2009.

Bruce E. Newman, Newman, Creed & Associates, Bristol, CT, for Plaintiff.

Beverly W. Garofalo, Sally Downes Welch, Jackson Lewis, Hartford, CT, for Defendant.

### MEMORANDUM OF DECISION AND ORDER

DOMINIC J. SQUATRITO, District Judge.

The plaintiff, Sarah H. Colby, the executrix for the estate of Stuart T. Colby ("the

Plaintiff"), brings the action against the defendant Pye & Hogan LLC a/k/a Pye & Hogan Liquidation Corp. a/k/a Pye & Hogan Machine Corp. ("the Defendant") alleging violations of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* ("the ADA") and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen.Stat. §§ 46a–60 *et seq.*[1] The Plaintiff also brings a promissory estoppel claim under Connecticut common law. The Defendant has filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons that follow, the Defendant's motion for summary judgment (**dkt. # 21**) is **GRANTED.**

## I. FACTS[2]

The Defendant specializes in the production and sale of precision aircraft parts. At the time of the events described herein, Jeffrey Woods ("Woods") was the Defendant's President, and Steven Helmedach ("Helmedach") was the Vice–President. Prior to January 2005, the Defendant employed one part-time purchasing agent. During the winter of 2004, the Defendant observed that its business had reached such a level that the employment of a full-time purchasing agent was required. Thus, the Defendant created a new full-time purchasing agent position, which expanded the responsibilities of the previous part-time purchasing agent position significantly, and sought out candidates to fill it.

Colby applied for the new position. On January 24, 2005, having assessed that Colby had the requisite experience for the new position, the Defendant hired him. Colby and the Defendant negotiated the terms of Colby's employment, which included an annual salary of $57,000.

On February 1, 2005, Colby learned that he had cancer. This was a recurrence of a cancer Colby previously had endured. Colby advised Woods that he would need to be out of work up to six scheduled days per month in order to accommodate his chemotherapy treatments. In particular, Colby informed Woods that he would need

---

1. This action was originally filed in the Connecticut Superior Court, Judicial District of Middlesex at Middletown. The Defendant then removed the case to this Court pursuant to 28 U.S.C. § 1446. Subsequently, Stuart T. Colby ("Colby"), who was the original plaintiff in the case, died from the illness at issue in this case. Thereafter, the Plaintiff, Colby's wife and the duly-appointed executrix of Colby's estate, substituted herself as the plaintiff.

2. The Court notes that, in the Plaintiff's Local Rule 56(a)(2) Statement, the Plaintiff did not either admit or deny a number of the factual allegations in the Defendant's Local Rule 56(a)(1) Statement. Under the Local Rules of Civil Procedure for the District of Connecticut, "[a]ll material facts set forth in [the moving party's Local Rule 56(a)1 [S]tatement and supported by the evidence will be deemed admitted unless controverted by the statement required to be filed and served by the opposing party in accordance with Local Rule 56(a)2." D. Conn. L. Civ. R. 56(a)(1). The Court is aware that "in determining whether the moving party has met this burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts contained in the moving party's [Local] Rule 56[] statement. It must be satisfied that the citation to evidence in the record supports the assertion." *Vt. Teddy Bear Co., Inc. v. 1–800 Beargram Co.,* 373 F.3d 241, 244 (2d Cir.2004); *see Giannullo v. City of New York,* 322 F.3d 139, 143 n. 5 (2d Cir.2003) (stating that, "although [Local] Rule 56[] is designed to streamline the district court's consideration of summary judgment motions," not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts"). That being said, the Court shall deem admitted any properly-supported factual allegation in the Defendant's Local Rule 56(a)(1) Statement to which the Plaintiff did not either admit or deny.

to be out the day of his scheduled treatment and perhaps the following day. The Woods agreed to Colby's request, specifically stating that he would "work with" him. Colby agreed to come into the office on Saturdays to make up some of the lost time.

The Defendant asserts that, initially, Colby kept his superiors apprised of the dates he would be absent. The Defendant claims, however, that as time went on, Colby's diligence in notifying his superiors of his absences decreased and his absences in general grew more frequent. The Defendant maintains that Colby's work attendance became unpredictable because he provided advance notice of his absences less regularly. As a result, the Defendant altered Colby's compensation arrangement, i.e., by paying Colby on an hourly basis only for the time he actually worked, instead of paying Colby on the basis of his predetermined yearly salary.

The Defendant asserts that through to July 2005, its discontentment with Colby's attendance increased. Colby was absent from work six days in April 2005, eight days in May 2005, six days in June 2005,[3] and six days in July 2005. (*See* dkt. # 21–4, Ex. 2, pt. C.) For the weeks ending on April 16, 2005; April 30, 2005; May 14, 2005; May 28, 2005; June 4, 2005; June 25, 2005; July 2, 2005; and July 9, 2005, the Plaintiff worked two days per week. (*See id.*)

The Defendant maintains that Colby's absenteeism caused costly errors at work, compelling Woods and Helmedach to conclude that Colby was unable to perform the basic functions of his position in a satisfactory manner. Consequently, on or about July 15, 2005, Helmedach notified Colby that his employment was terminated. Colby was issued two "pink slips," one of which indicated "absentee issues" as the reason for the discharge, and the other not specifying a reason. Helmedach also notified Colby that he would be eligible for rehire if his circumstances were to change.

Subsequent to his dismissal, Colby's successor was also terminated due to unsatisfactory performance. Colby was later hired as a Senior Buyer by another company on December 12, 2005, and remained employed there until December 15, 2006. Colby died on March 18, 2007.

## II. DISCUSSION

The Plaintiff claims that the Defendant violated the ADA and CFEPA by terminating Colby because of his disability and failing to make reasonable accommodations for his disability. The Plaintiff also brings a promissory estoppel claim against the Defendant, claiming that the Defendant should have reasonably expected Colby to rely on its promise that it would "work with" him during his chemotherapy treatment, and that Colby detrimentally relied on the Defendant's promise. The Defendant moves for summary judgment, arguing that the all of the Plaintiff's ADA and CFEPA claims fail. The Court shall address the parties arguments seriatim.

### A. SUMMARY JUDGMENT STANDARD

A motion for summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

---

**3.** For some reason not given by the parties, Colby's paysheet for June 2005 does not appear to contain any information for the weeks ending on June 11, 2005 and June 18, 2005. (*See* dkt. # 21–4, Ex. 2, pt. C.)

Summary judgment is appropriate if, after discovery, the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "The burden is on the moving party 'to demonstrate the absence of any material factual issue genuinely in dispute.'" *Am. Int'l Group, Inc. v. London Am. Int'l Corp.*, 664 F.2d 348, 351 (2d Cir.1981) (quoting *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1319–20 (2d Cir. 1975)).

A dispute concerning a material fact is genuine "'if evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir.1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The Court must view all inferences and ambiguities in a light most favorable to the nonmoving party. *See Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Id.*

### B. ADA/CFEPA DISABILITY DISCRIMINATION

■ The ADA provides that, "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Claims arising under the ADA are analyzed using the familiar burden-shifting analysis established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir.2006) Under that analysis, "[a] plaintiff must establish a prima facie case; the employer must offer through the introduction of admissible evidence a legitimate non-discriminatory reason for the discharge; and the plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason is a pretext." *Id.*[4]

■ As the Second Circuit has noted,

[t]o establish a prima facie case under the ADA, a plaintiff must show by a preponderance of the evidence that: (1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability.

*Id.* (internal quotation marks omitted). There is no dispute with regard to the first or second elements of the prima facie case, and there is no dispute that the termination of the Plaintiff's employment qualifies as an adverse employment action. The Defendant argues, however, that by the time it terminated Colby's employment in July 2005, he had ceased to be able to perform any of the essential functions of his job in a satisfactory manner. The Plaintiff responds that there are genuine

---

**4.** Because Connecticut courts review federal precedent for guidance in enforcing their own employment discrimination statutes, *see Levy v. Comm'n on Human Rights and Opportunities,* 236 Conn. 96, 103, 671 A.2d 349 (1996), the Court shall address the ADA and CFEPA claims together.

issues of fact regarding Colby's ability to perform his job.

■ Under the ADA, an individual is qualified for a job if he can perform its essential functions. *Shannon v. New York City Transit Auth.*, 332 F.3d 95, 99–100 (2d Cir.2003). "The term 'essential functions,' which is not defined in the ADA itself, is defined in ADA regulations promulgated by the Equal Employment Opportunity Commission generally to mean the 'fundamental' duties of the position in question, but not functions that are merely 'marginal,' 29 C.F.R. § 1630.2(n)(1) (1999)." *Mitchell v. Washingtonville Cent. School Dist.*, 190 F.3d 1, 8 (2d Cir.1999); *see Peters v. Sikorsky Aircraft Corp.*, No. 3:04 CV 1066, 2006 WL 2331077, at *8 (D.Conn. Aug. 10, 2006).

■ The Second Circuit has noted that "[a] court must give considerable deference to an employer's judgment regarding what functions are essential for service in a particular position," *D'Amico v. City of New York*, 132 F.3d 145, 151 (2d Cir.1998). "[A] plaintiff complaining of discriminatory discharge shows 'qualification' by demonstrating satisfactory job performance, in accordance with the particular employer's criteria for satisfactory performance[ ]...." *Sista*, 445 F.3d at 172 (internal quotation marks omitted). The "otherwise qualified" prong of prima facie ADA discrimination claim, however, "requires only a minimal showing of qualification." *Id.* at 171 (internal quotation marks omitted). "[A plaintiff] only needs to demonstrate that [ ]he possesses the basic skills necessary for performance of [the] job." *Id.* (internal quotation marks omitted).

Here, the Defendant contends that regular, predictable attendance was an essential function of Colby's employment.[5] "As

general rule, some degree of regular, predictable attendance is fundamental to most jobs, ... and an employee who cannot get to work does not satisfy the essential requirements of her employment." *Shepheard v. City of New York*, 577 F.Supp.2d 669, 676 (S.D.N.Y.2008) (internal quotation marks omitted); *see Kotlowski v. Eastman Kodak Co.*, 922 F.Supp. 790, 798 (W.D.N.Y.1996); *Aquinas v. Federal Exp. Corp.*, 940 F.Supp. 73, 78 (S.D.N.Y.1996); *Misek–Falkoff v. IBM Corp.*, 854 F.Supp. 215, 227 (S.D.N.Y.1994). There is no dispute that the Defendant consented to Colby being absent up to six days per month to receive chemotherapy treatments. The Defendant's flexibility in this regard suggests that strict attendance was not necessarily an essential function of Colby's employment.

■ Nonetheless, the record indicates that Colby was expected to at least notify the Defendant when he would not be able to attend work. The Defendant has submitted Woods' and Helmedach's affidavits wherein both Woods and Helmedach state that Colby, over time, increasingly failed to notify anyone at work that he would be absent. The Plaintiff has submitted no evidence to rebut these affidavits. In addition, the evidence shows that, for at least one month during his employment (May 2005), Colby was absent from work for more than the agreed-to six days. Thus, it appears that Colby's attendance ceased being regular or predictable. Given this fact, the Court finds that the Plaintiff has failed to establish a prima facie case of disability discrimination.

■ Even if the Plaintiff had met the prima facie case of disability discrimination, this claim would still fail. The Defendant has articulated a legitimate,

**5.** The Court notes that Colby's skills, knowledge, or expertise are not at issue, and the

Court in no way means to impugn Colby's competence.

nondiscriminatory reason for Colby's termination, namely, Colby's absenteeism and its problematic effects on the Defendant's business. The burden then shifts back to the Plaintiff, whereby the Plaintiff must present sufficient evidence showing that the Defendant's proffered reason is a mere pretext for an underlying discriminatory motive.

The Court points out that the Plaintiff has not presented any argument regarding pretext. In the interests of fairness, however the Court shall address this issue insofar as the Plaintiff's arguments and evidence could be read to suggest pretext. There is evidence that Colby was issued two "pink slips," one of which indicated "absentee issues" as the reason for the termination, and the other not providing a reason. There is also evidence that Colby obtained employment with another company after his tenure with the Defendant.

"[A] jury issue on the question of pretext may be created when an employer offers inconsistent and varying explanations for its decision to terminate a plaintiff." *Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 170 (2d Cir.2001). In this case, however, the Plaintiff has not presented sufficient evidence from which a reasonable finder of fact could conclude that the Defendant's reasons for terminating Colby were pretextual. The fact that one pink slip provided "absentee issues" as the reason for the termination, whereas the other did not provide a reason, is not evidence of "inconsistent and varying explanations." Because one of the pink slips did not contain any explanation at all, the Court fails to see how it could be inconsistent with a pink slip containing an explanation.

In addition, a subsequent employer's employment needs do not speak to whether an employee's absenteeism in his former job warranted his termination. As the Court noted above, Colby's skills, knowledge, and expertise are not at issue. Instead, his absenteeism was the proffered reason for his termination. Thus, the fact that Colby obtained a position with another employer [6] is insufficient to demonstrate pretext. The Court thus finds that the Plaintiff has failed to meet the evidentiary burden for showing that the Defendant's proffered reason was a mere pretext for an underlying discriminatory motive. Consequently, with regard to the Plaintiff's ADA and CFEPA disability discrimination claims, the Defendant's motion for summary judgment is granted.

### C. ADA/CFEPA REASONABLE ACCOMMODATION

The Defendant next argues that the Plaintiff's reasonable accommodation fails as a matter of law. Specifically, Colby has failed to identify any reasonable accommodations that, if implemented, would permit [him] to perform the essential functions of his job.

In reasonable-accommodation cases the plaintiff's burden requires a showing that (1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.

*Graves v. Finch Pruyn & Co., Inc.*, 457 F.3d 181, 184 (2d Cir.2006); *see Lovejoy-*

---

**6.** The record contains few details about this subsequent employer, which, for all the Court knows, very well may have a work schedule that differs from the Defendant's, or may be more flexible with its attendance policies.

*Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 216 (2d Cir.2001). Reasonable accommodation can include "job restructuring, part-time or modified work schedules, reassignment to a vacant position ... and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9). "[A]n accommodation is reasonable only if its costs are not clearly disproportionate to the benefits that it will produce." *Borkowski v. Valley Cent. School Dist.*, 63 F.3d 131, 138 (2d Cir. 1995). "[I]t is the responsibility of the individual with a disability to inform the employer that an accommodation is needed." *Graves*, 457 F.3d at 184 (internal quotation marks omitted).

In this case, there is only one accommodation that Colby requested, namely, six scheduled days off per month for chemotherapy treatments. The Defendant did not refuse this accommodation. Rather, the record shows that Colby's own conduct (i.e., his unscheduled absences) breached the terms of the accommodation. Moreover, the Plaintiff has not presented any evidence demonstrating that the Defendant refused any other request from Colby for a reasonable accommodation. Because the Defendant did not refuse a reasonable accommodation request, the Plaintiff's reasonable accommodation claims under the ADA and CFEPA fail as a matter of law. Consequently, with regard to the Plaintiff's ADA and CFEPA reasonable accommodation claims, the Defendant's motion for summary judgment is granted.

## D. PROMISSORY ESTOPPEL

The Defendant also argues that the Plaintiff's promissory estoppel claim fails as a matter of law. The Plaintiff responds that the issues of promissory estoppel are all factual in nature and should be left to the trier of fact.

"The doctrine of promissory estoppel serves as an alternative basis to enforce a contract in the absence of competing common-law considerations." *Torringford Farms Ass'n, Inc. v. City of Torrington*, 75 Conn.App. 570, 576, 816 A.2d 736 (2003). "[U]nder the doctrine of promissory estoppel [a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." *Stewart v. Cendant Mobility Servs. Corp.*, 267 Conn. 96, 104, 837 A.2d 736 (2003) (internal quotation marks omitted). "A fundamental element of promissory estoppel, therefore, is the existence of a clear and definite promise which a promisor could reasonably have expected to induce reliance." *Id.* Furthermore, "[a]lthough the promise must be clear and definite, it need not be the equivalent of an offer to enter into a contract because [t]he prerequisite for ... application [of the doctrine of promissory estoppel] is a promise and not a bargain and not an offer." *Id.* at 105, 837 A.2d 736 (internal quotation marks omitted). "Additionally, the promise must reflect a present intent to commit as distinguished from a mere statement of intent to contract in the future." *Id.*

The promise alleged here was the Defendant's agreement to "work with" Colby to accommodate his illness. This agreement appears to have been in reference to Colby's schedule. In the Court's view, a statement to "work with" somebody falls far short of a clear and definite promise, even if the statement was made in response to a specific request.

In addition, even if the Defendant's statement would constitute a sufficiently clear and definite promise, the Plaintiff has

presented no specific evidence that Colby took any action or forbearance in reliance on such a promise. Colby was already working for the Defendant when the statement was made, so he did not accept the position with the Defendant based on the alleged promise. There is nothing demonstrating that he took any other action or forbearance because of the promise. Without providing evidence of action or forbearance in reliance a promise amounting to a detrimental change of position, Colby cannot establish a prima facie promissory estoppel claim. *See Saye v. Howe*, 92 Conn.App. 638, 647–49, 886 A.2d 1239 (2005) (affirming judgment in favor of defendant where plaintiff did not change his position or status in reliance on any representations by defendant).

Moreover, the evidence in this case indicates that the Defendant did, in fact, work with Colby and accommodate him. That is, even if there had been a sufficiently clear and definite promise, and even if Colby had relied on that promise, it appears that the Defendant kept its promise. The Defendant allowed Colby to take scheduled leave up to six days per month. The record shows that, over time, Colby failed to notify the Defendant about his absences, which altered the terms of the requested accommodation. The Defendant's agreement to "work with" Colby on his schedule was not a promise to give Colby a license to come and go to work as he pleased. No reasonable finder of fact could conclude otherwise. In light of the above, the Court finds that the Plaintiff's promissory estoppel claim fails. Consequently, with regard to the Plaintiff's promissory estoppel claim, the Defendant's motion for summary judgment is granted.

## III. CONCLUSION

The facts of this case are undeniably sad, and the Court expresses its sympathy toward Sarah Colby and her family. Nonetheless, for the reasons provided above, the Defendant's motion for summary judgment (**dkt. # 21**) must be **GRANTED. Judgment in favor of the Defendant, Pye & Hogan LLC a/k/a Pye & Hogan Liquidation Corp. a/k/a Pye & Hogan Machine Corp, shall enter on the First, Second, and Third Counts of the complaint. The clerk shall close this file.**